# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

RAYFORD v AMERICAN HOUSE ROSEVILLE I, LLC

Docket No. 163989. Argued April 9, 2025 (Calendar No. 1). Decided July 31, 2025.

Timika Rayford brought an action in the Macomb Circuit Court against American House Roseville I, LLC, alleging race-based harassment, sex- or gender-based harassment, retaliation, and hostile work environment under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*.; wrongful discharge in violation of public policy; malicious prosecution; and abuse of process. Defendant hired plaintiff, a certified nursing assistant, in February 2017. Approximately one week after beginning her employment, plaintiff signed an "Employee Handbook Acknowledgement" (the Acknowledgment), which provided a limitations period of 180 days for bringing any claim or lawsuit arising out of plaintiff's employment. Plaintiff alleged that a few months after beginning her employment, she reported inappropriate behavior she had witnessed between upper management and nursing assistants to defendant's human-resources division and the state of Michigan and that after doing so, plaintiff's manager retaliated against her in several ways. Plaintiff brought her complaint in April 2020, and defendant moved for summary disposition, arguing that plaintiff's claims were barred by the 180-day limitations period in the Acknowledgment. Plaintiff countered, in part, that the Acknowledgment was unenforceable as an unconscionable contract of adhesion. The court, Michael E. Servitto, J., granted defendant's motion and dismissed plaintiff's claims. Plaintiff appealed, arguing, in relevant part, that the agreement purporting to shorten the statutory three-year limitations period applicable to civil-rights claims, see MCL 600.5805(2), was procedurally and substantively unconscionable. In an unpublished per curiam opinion issued on December 16, 2021 (Docket No. 355232), the Court of Appeals, K. F. KELLY, P.J., and JANSEN and RICK, JJ., affirmed. Plaintiff sought leave to appeal, and the Supreme Court ordered oral argument on the application to address whether *Timko v Oakwood Custom Coating, Inc*, 244 Mich App 234 (2001), correctly held that contractual limitations clauses that restrict civil-rights claims do not violate public policy. 511 Mich 1010 (2023). Following the November 8, 2023 oral argument on the application, the Supreme Court granted leave to appeal to additionally address (1) whether *Clark v DaimlerChrysler Corp*, 268 Mich App 138 (2005), properly extended the Supreme Court's holding in *Rory v Continental Ins Co*, 473 Mich 457 (2005), to employment contracts and (2) if not, whether the contract at issue in this case is an unconscionable contract of adhesion. 513 Mich 1096 (2024).

In an opinion by Justice WELCH, joined by Chief Justice CAVANAGH and Justices BERNSTEIN, BOLDEN, and THOMAS, the Supreme Court *held*:

While contractually shortened limitations periods are generally permitted, they require close judicial scrutiny before enforcement when the contract is an adhesive non-negotiated boilerplate agreement between an employer and an employee. A shortened limitations provision contained in such an agreement must be examined for reasonableness. These agreements are also subject to traditional contract defenses, and, as adhesion contracts, may be procedurally and substantively unconscionable. Accordingly, *Clark* and *Timko* were overruled. *Camelot Excavating Co, Inc v St Paul Fire & Marine Ins Co*, 410 Mich 118 (1981), and *Herweyer v Clark Hwy Servs, Inc*, 455 Mich 14 (1997), provide the correct framework for reviewing contractually shortened limitations periods contained in adhesive boilerplate employment agreements.

1. *Camelot* held that a court must review contractually shortened limitations periods in the nonadhesive, nonemployment context for reasonableness. *Herweyer* then extended that analysis to shortened limitations periods in employment agreements and implied that a period of six months was not reasonable, noting the inherently inequitable difference in bargaining power between an employer and employee and calling for "close judicial scrutiny" in such cases. *Timko* ignored *Herweyer*'s implication that a six-month limitations period was unreasonable and instead held that such a contractual limitations period in an employment application was reasonable in the context of a civil-rights claim, over a dissent that emphasized the issues inherent in adhesion contracts. *Rory*, a case involving an insurance dispute, stated that adhesion contracts should neither receive close judicial scrutiny nor be subject to a reasonableness analysis. *Rory* was a dramatic break from precedent and from the general rule that contractual limitations periods would be enforced only if reasonable. Finally, *Clark* then erroneously extended *Rory* to employment agreements with shortened limitations periods. Accordingly, *Clark* was overruled.

Because the issue presented in *Rory* related to auto insurance, *Rory*'s language extending its holding beyond insurance contracts was nonbinding dicta. *Rory*'s holding was therefore limited to insurance-contract cases and did not extend to adhesive employment agreements.

2. When reviewing adhesive employment agreements and shortened limitations periods, courts must conduct a reasonableness analysis. Courts must first determine whether a challenged employment agreement is adhesive. *Black's Law Dictionary* (12th ed) defines "adhesion contract" as a "standard-form contract prepared by one party, to be signed by another party in a weaker position, usu. a consumer, who must essentially either accede (adhere) to the terms or not have a contract at all." If the challenged employment agreement is adhesive, courts must apply *Camelot* to determine whether a shortened limitations period is reasonable. As applied to a contractually shortened limitations period, *Camelot*'s reasonableness test requires (1) that the claimant have sufficient opportunity to investigate and file an action, (2) that the time not be so short as to work a practical abrogation of the right of action, and (3) that the action not be barred before the loss or damage can be ascertained. *Timko* was overruled to the extent that it could be interpreted as accepting a shortened limitations period of 180 days as per se reasonable because the *Timko* majority did not actually conduct any analysis on how the *Camelot* factors applied to the parties.

Applying *Camelot* and *Herweyer* to the instant case, plaintiff lacked bargaining power when she was presented with a boilerplate employment agreement that contained a shortened limitations period of 180 days. The contract was adhesive and, as a result, warrants close judicial scrutiny of the challenged shortened limitations provision. Because the *Camelot* factors require

the development of a full record to assess the reasonableness of the shortened limitations provision and plaintiff in this case never had the opportunity to conduct discovery, this matter was remanded to the trial court so that the record could be further developed to determine the reasonableness of the shortened limitations period.

3. In Michigan, unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party. For a contract to be unconscionable, it must be procedurally and substantively unconscionable. Procedural unconscionability exists when a weaker party has no realistic alternative but to accept the term. Substantive unconscionability requires courts to analyze the reasonableness of the challenged term. A contract provision is substantively unreasonable if the inequity shocks the conscience.

In this case, the Court of Appeals' reasoning that plaintiff did not provide evidence that she lacked other employment options and that the agreement was therefore not unconscionable was erroneous. To prove the existence of procedural unconscionability, an employee is not required to demonstrate that they do not have any other employment options. Our caselaw states that if one party to a contract possesses little to no bargaining power, the contract is procedurally unconscionable. In this case, however, the parties were unable to litigate this question in the trial court; accordingly, on remand, the trial court must determine whether the shortened limitations period was procedurally unconscionable in the first instance. Further, the Court of Appeals in this case relied on *Clark* when determining substantive unconscionability; because *Clark* was overruled, the trial court must determine whether the shortened limitations period was substantively unconscionable. Finally, if the shortened limitations provision was either unreasonable or unconscionable, *Herweyer* provides that the full three-year statutory limitations period would govern the case.

Reversed and remanded to the Macomb Circuit Court for further proceedings.

Chief Justice CAVANAGH, concurring, agreed with nearly every point in the majority opinion but wrote separately to question the majority's conclusion that the holdings in *Rory* that went beyond insurance contracts were mere dicta. She suspected that *Rory*'s statements regarding adhesion contracts were not dicta but rather were germane to the case and thus comprised a holding. Despite this minor disagreement with the majority opinion, she agreed with the majority's conclusion that *Rory* should not apply to adhesion contracts in the employment context and viewed the majority opinion as creating a narrow carveout from *Rory*'s holding on adhesion contracts for those in the employment context.

Justice ZAHRA, dissenting, would have held that *Rory* controlled the result of this appeal. Over the last 20 years, Michigan courts have routinely applied *Rory*'s holding that an unambiguous contract must be enforced as written unless doing so would violate law or public policy—without regard to judicial perceptions of "reasonableness" or the purported adhesive nature of the contract. *Rory* was well-reasoned, has proven workable in practice, and has helped ensure that contract law remains a reliable, predictable means of conducting business and ordering affairs in Michigan. In this case, the Court of Appeals correctly held that the 180-day limitations period in the Acknowledgment was enforceable against plaintiff. The only argument plaintiff brought against

the enforcement of this shortened limitations period was that it was an "unconscionable contract of adhesion." This argument lacked merit. It was of no legal significance whether the employment contract was an adhesion contract. The question was whether the limitations term was unconscionable, and the 180-day limitations period here was neither procedurally nor substantively unconscionable. Plaintiff did not allege that she had no realistic alternative but to accept the shortened limitations period; there was no evidence that rejecting the terms of employment and finding another job was not a realistic alternative. Additionally, the assertion that a 180-day limitations period shocks the conscience contradicted both legal authority and common sense; a 180-day limitations period is not extreme, as shown by the fact that six-month limitations periods in employment contracts have expressly been allowed in Michigan for more than 20 years. The majority opinion resolved the case by attempting to blend *Camelot*'s "reasonableness" rule for contractual limitations periods with *Herweyer*'s statements about adhesion contracts receiving special review, but these are distinct concepts stemming from different lines of cases. Justice ZAHRA asserted that the majority opinion undermines the stability of Michigan contract law, resurrects and muddles together long-rejected legal theories, and fosters confusion about what validly formed contracts will and will not be enforced in Michigan. Accordingly, Justice ZAHRA would have affirmed the judgment of the Court of Appeals.

Justice HOOD did not participate because the Court considered this case before he assumed office.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 31, 2025

STATE OF MICHIGAN

SUPREME COURT

TIMIKA RAYFORD,

      Plaintiff-Appellant,

v                                   No. 163989

AMERICAN HOUSE ROSEVILLE I, LLC,
doing business as AMERICAN HOUSE
EAST I and AMERICAN HOUSE,

      Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH (except HOOD, J.)

WELCH, J.

In this case, we address whether an employer can contractually shorten the three-year statute of limitations applicable to civil rights claims to 180 days through a boilerplate employment agreement. While contractually shortened limitations periods are generally permitted, they require further analysis before enforcement where, as here, a non-negotiated boilerplate agreement is an adhesion contract between an employer and an

employee. We hold that an adhesive boilerplate employment agreement that shortens a limitations period must be examined for reasonableness. Additionally, these agreements are subject to traditional contract defenses, including unconscionability, and, as adhesion contracts, may be procedurally and substantively unconscionable.

In reaching these conclusions, we overrule the Court of Appeals' decision in *Clark v DaimlerChrysler Corp*, 268 Mich App 138; 706 NW2d 471 (2005), which extended this Court's decision in *Rory v Continental Ins Co*, 473 Mich 457; 703 NW2d 23 (2005), to employment agreements. As a result, our precedent set forth in *Camelot Excavating Co, Inc v St Paul Fire & Marine Ins Co*, 410 Mich 118; 301 NW2d 275 (1981), and *Herweyer v Clark Hwy Servs, Inc*, 455 Mich 14; 564 NW2d 857 (1997), provides the correct framework for reviewing contractually shortened limitations periods contained in boilerplate employment agreements. We also overrule *Timko v Oakwood Custom Coating, Inc*, 244 Mich App 234; 625 NW2d 101 (2001). In *Timko*, the Court of Appeals held that a contractually shortened limitations period of 180 days in an employment agreement was not inherently unreasonable, reaching this result without conducting a particularized reasonableness analysis under *Herweyer*. We therefore reverse the Court of Appeals' judgment and remand this case to the Macomb Circuit Court for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Timika Rayford, a certified nursing assistant, was hired by defendant American House Roseville I, LLC, a nursing care facility, in February 2017. Approximately one week into her employment, plaintiff signed the "Employee Handbook

2

Acknowledgement" (the Acknowledgment). The Acknowledgment stated, in relevant part:

> In consideration of my employment, *I agree that any claim or lawsuit arising out of my employment with the Company, or my application for employment with the Company, must be filed no more than 180 days after the date of* [*the*] *employment action that is the subject of the claim or lawsuit*, unless the applicable statute of limitations period is shorter than 180 days in which case I will continue to be bound by that shorter limitations period. While I understand that the statute of limitations for claims arising out of an employment action may be longer than 180 days, I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY, unless state, federal or local law prohibits such waiver. [Emphasis added; boldface omitted.]

According to plaintiff, a few months into the job and after she had been promoted, she became aware of inappropriate sexual behavior between defendant's upper management and other nursing assistants—staff were allegedly given preferential treatment in exchange for sexual acts. Plaintiff reported this behavior to defendant's human resources division and the state of Michigan.[1] Plaintiff alleges that, after doing so, her manager began to retaliate against her in various ways, including issuing write-ups and ignoring concerns that she expressed about a separate incident.

Around the same time as the alleged retaliation, plaintiff finished a shift but left her purse in a locked room at work when she left. When she returned the next day, she allegedly discovered that the purse had been stolen and reported the theft to defendant and to the police department. Defendant then accused plaintiff of lying and allegedly showed the police a video of plaintiff leaving with her purse. Plaintiff was criminally charged with making a false report, and defendant terminated her employment a few days later on July 7,

---

[1] The record is unclear regarding to which agency or department plaintiff reported this behavior.

3

2017.  The criminal charge was eventually dismissed when defendant could not produce the videorecording.[2]

In April 2020, plaintiff filed the instant complaint, alleging violations of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*.  Specifically, she alleged race-based harassment, sex- or gender-based harassment, retaliation, and hostile work environment.  She also brought claims for wrongful discharge in violation of public policy, malicious prosecution, and abuse of process.  In response, defendant moved for summary disposition under MCR 2.116(C)(7) and (C)(8).  Defendant argued that plaintiff's claims were barred by the contractually shortened 180-day limitations period contained in the Acknowledgment and, therefore, plaintiff could not rely upon the applicable three-year statute of limitations to file her complaint.[3]  Plaintiff countered that the Acknowledgment was unenforceable as an unconscionable contract of adhesion and, alternatively, that defendant should be estopped from relying on it because defendant did not provide her with a copy of the Acknowledgment in violation of the Bullard-Plawecki Employee Right to Know Act (ERKA), MCL 423.501 *et seq*.

The trial court granted defendant's motion for summary disposition and dismissed plaintiff's claims on the basis that the Acknowledgment "clearly and unambiguously

---

[2] According to plaintiff, the video originally produced by defendant was incorrectly date-stamped and depicted footage of her from a few days before the incident.

[3] The ELCRA does not have an express statute of limitations.  Therefore, the limitations period falls under the Revised Judicature Act (RJA), MCL 600.101 *et seq*., and, specifically, MCL 600.5805(2), which permits claims to be brought within three years.  See *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 284; 696 NW2d 646 (2005) (holding that an ELCRA claim must be filed within three years of the date of the accrual of the cause of action pursuant to MCL 600.5805).

required plaintiff to file suit within six months after the date of the employment action giving rise to suit" and that plaintiff failed to provide any authority that the Acknowledgment was unconscionable. The trial court additionally dismissed plaintiff's ERKA and abuse-of-process claims.[4]

Plaintiff appealed as of right, and the Court of Appeals affirmed in an unpublished per curiam opinion. The panel concluded that the contractual limitations period in the Acknowledgment barred plaintiff's claims and that plaintiff otherwise failed to state a claim for abuse of process. *Rayford v American House Roseville I, LLC*, unpublished per curiam opinion of the Court of Appeals, issued December 16, 2021 (Docket No. 355232), pp 1, 7. Regarding the shortened limitations period, the panel noted that unambiguous employment contract provisions providing for a shortened limitations period are to be enforced as written unless the provision violates public policy or is otherwise unenforceable under a traditional contract defense. *Id*. at 3, citing *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 30; 772 NW2d 801 (2009).

Plaintiff argued to the panel that although our decision in *Herweyer*, which required " 'close judicial scrutiny' " in determining whether a limitations provision in an adhesive contract is enforceable, was purportedly overruled by *Rory*, there remains an open question whether *Rory* should apply to non-negotiated employment agreements like the one at issue here. *Rayford*, unpub op at 3, quoting *Herweyer*, 455 Mich at 21. The panel rejected this argument, affirming the application of *Rory* to the case and declaring that an adhesion contract is " 'simply a type of contract and is to be enforced according to its plain terms' "

---

[4] Plaintiff moved for reconsideration of the abuse-of-process claim only; the trial court denied the motion. We decline to address this issue.

5

just like any other contract. *Rayford*, unpub op at 3, quoting *Rory*, 473 Mich at 488. The Court additionally noted that even if *Herweyer* applied, plaintiff had not explained how she would benefit under that analysis. *Rayford*, unpub op at 3.[5]

The panel next considered the traditional contract defense of unconscionability, explaining that, "[f]or a contract or contract provision to be unconscionable, both procedural and substantive unconscionability must exist." *Id*. at 4, citing *Clark*, 268 Mich App at 143. The panel determined that there was no evidence that plaintiff lacked realistic alternatives to employment with defendant when she signed the Acknowledgment and that, therefore, the contract was not unconscionable.[6] *Rayford*, unpub op at 4-5.

The Court of Appeals concluded that, because the parties agreed to the 180-day limitations period for any claim arising from plaintiff's employment, plaintiff had forfeited her claim by waiting more than two years after her July 2017 termination to file it. *Id*. at 4, 7. It thus found that the trial court was correct and ruled in defendant's favor under MCR 2.116(C)(7).

Plaintiff sought leave to appeal in this Court. On June 23, 2023, we ordered oral argument on the application, directing the parties to address "whether *Timko v Oakwood Custom Coating, Inc*, 244 Mich App 234 (2001), correctly held that contractual limitations

---

[5] We note that plaintiff's civil rights claims were dismissed on a motion for summary disposition under MCR 2.116(C)(7) based entirely on the existence of a shortened limitations period. Thus, plaintiff never was able to argue the merits of her case.

[6] The Court of Appeals also addressed plaintiff's claim that defendant was estopped from relying on the Acknowledgment because the employer had violated the ERKA when it failed to respond to her request for her employment file. The Court of Appeals held that plaintiff failed to show that the ERKA applied. *Rayford*, unpub op at 5-7. We did not grant leave to address this issue.

6

clauses which restrict civil rights claims do not violate public policy. See, e.g., *Rodriguez v Raymours Furniture Co, Inc*, 225 NJ 343[; 138 A3d 528] (2016)." *Rayford v American House Roseville I, LLC*, 511 Mich 1010, 1010 (2023).

Following the November 8, 2023 oral argument on the application, this Court granted leave to appeal to additionally address "(1) whether *Clark v DaimlerChrysler Corp*, 268 Mich App 138 (2005), properly extended this Court's holding in *Rory v Continental Ins Co*, 473 Mich 457 (2005), to employment contracts (see also *Camelot Excavating Co, Inc v St Paul Fire & Marine Ins Co*, 410 Mich 118 (1981), overruled by *Rory*, 473 Mich 457, and *Herweyer v Clark Hwy Servs, Inc*, 455 Mich 14 (1997), overruled by *Rory*, 473 Mich 457); and (2) if not, whether the contract at issue in this case is an unconscionable contract of adhesion." *Rayford v American House Roseville I, LLC*, 513 Mich 1096, 1096 (2024).

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Defendant sought summary disposition under both MCR 2.116(C)(7) and (C)(8), arguing, in relevant part, that summary disposition of all of plaintiff's claims was warranted under MCR 2.116(C)(7) on the basis of the contractually shortened limitations period.[7] "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other

---

[7] Summary disposition is warranted under MCR 2.116(C)(7) when a claim is brought after the statute of limitations has expired. MCR 2.116(C)(7) (governing summary disposition when "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of . . . statute of limitations . . . .").

documentary evidence." *Id*. at 119. "[T]he substance or content of the supporting proofs must be admissible in evidence." *Id*. "The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Id*.

## III. LEGAL BACKGROUND

Contracts are generally enforced as written, *Hunt v Drielick*, 496 Mich 366, 376; 852 NW2d 562 (2014), unless there is a defense or other reason not to enforce the contract, see, e.g., *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 537, 540-541; 872 NW2d 412 (2015). Equitable defenses to contracts have developed over time in recognition of flaws that can occur in the process of contract formation. These defenses include unconscionability, duress, fraud, waiver, estoppel, and violations of public policy. See *Rory*, 473 Mich at 470 n 23. This Court has long recognized that such doctrines are necessary to " 'allow[] complete justice to be done in a case by adapting [our] judgments to the special circumstances of the case.' " *Bazzi v Sentinel Ins Co*, 502 Mich 390, 411; 919 NW2d 20 (2018), quoting *Tkachik v Mandeville*, 487 Mich 38, 45-46; 790 NW2d 260 (2010).

With this general background, we turn to a review of our state's law regarding shortened limitations periods. Historically, this Court has expressed skepticism of contractually shortened limitations periods. See, e.g., *Turner v Fidelity & Cas Co of NY*, 112 Mich 425, 427; 70 NW 898 (1897) ("The law does not favor clauses of limitation in policies of insurance, and they are strictly construed . . . ."). We were not alone. Most notably, the United States Supreme Court has explained that a contract "may validly limit . . . the time for bringing an action . . . provided that the shorter period itself shall be

8

a reasonable period." *Order of United Commercial Travelers of America v Wolfe*, 331 US 586, 608; 67 S Ct 1355; 91 L Ed 1687 (1947). This Court and the Court of Appeals have issued several decisions concerning contractually shortened limitations periods, reasonableness, unconscionability, and adhesion contracts—specifically adhesion contracts between an employer and an employee. A review of that law provides necessary context for why we overrule *Clark* and *Timko* and clarify the law that now applies.

A. *CAMELOT EXCAVATING CO, INC v ST PAUL FIRE & MARINE INS CO*

In *Camelot*, the plaintiff was a subcontractor of the third-party defendant and brought an action against the defendant insurance company to recover payment on a labor and materials bond. *Camelot*, 410 Mich at 123. The defendant insurance company argued that the bond contract contained a one-year limitations period and the plaintiff's lawsuit was filed beyond that period. *Id*. at 126.

This Court agreed with the Court of Appeals that "Michigan's general statutory limitation provision does not prohibit shorter contractual limitations on suits pertaining to private construction bonds." *Id*. However, we also concluded that any contractually shortened limitations period must be *reasonable*. "The boundaries of what is reasonable under the general rule require [1] that the claimant have sufficient opportunity to investigate and file an action, [2] that the time not be so short as to work a practical abrogation of the right of action, and [3] that the action not be barred before the loss or damage can be ascertained." *Id*. at 127.

Writing separately, Justice LEVIN emphasized how narrow he believed the decision was because the case involved one specific form of insurance contract, and he noted that

9

negotiated shortened limitations periods might be useful in business dealings. *Id*. at 140-141 (LEVIN, J., concurring). But he also emphasized that when there is a lack of bargaining power, one contracting party *unilaterally* supplants the Legislature's chosen limitations period. *Id*. at 141. He questioned whether public policy would allow for such preemption. *Id*.

## B. *HERWEYER v CLARK HWY SERVS, INC*

*Herweyer* involved allegations similar to those presented to us in this case. The plaintiff in *Herweyer* worked seasonally for the defendant and was injured during his employment. *Herweyer*, 455 Mich at 16. After the injury, the plaintiff found out that the defendant was not asking him back for the following season. *Id*. at 17. The plaintiff sued 31 months later, "alleging breach of the written employment contract, age discrimination, handicap discrimination[,] and retaliatory discharge for filing of a worker's compensation claim." *Id*. In response, the defendant moved for summary disposition, arguing that the action was barred by the six-month limitations period agreed upon in the employment contract.[8]

---

[8] The limitations provision in *Herweyer* was similar to the provision at issue in this case. It stated:

> "I will not commence any action or suit relating to my employment with the Company (or termination of the employment) more than six (6) months after the termination of my employment, and I agree to waive any statute of limitations to the contrary. I understand that this means that even if the law would give me the right to wait a longer time to make a claim, I am waiving that right, and that any claims not brought within six (6) months after my employment will be barred.

> I agree to the above terms of employment. I agree that if any of the above commitments by me is ever found to be legally unenforceable as

10

The trial court was hesitant to conclude that the contractually shortened limitations period of six months was reasonable, noting that the six-month limitations period "might foster premature lawsuits because of a lack of investigation time" and that the "plaintiff did not have a realistic choice in deciding to sign the agreement." *Id*. at 17 n 2. Despite this, the trial court relied on the agreement's savings clause, which provided that " 'if any of the above commitments . . . [are] ever found to be legally unenforceable as written, the particular agreement concerned shall be limited to allow its enforcement as far as legally possible.' " *Id*. at 16-17. The trial court read that as requiring that the "suit must be filed within a minimally reasonable time." *Id*. at 17. Although the trial court did not decide if the six-month limitations period was too short, it did conclude that 31 months was too long to wait to file a lawsuit. *Id*. at 17-18.

The Court of Appeals affirmed, likewise relying on the savings clause and noting that it "is settled law in Michigan that the courts will uphold a contractual provision limiting the time to bring suit where that limitation is reasonable . . . ." *Herweyer v Clark Hwy Servs, Inc*, 212 Mich App 105, 107; 537 NW2d 225 (1995), rev'd 455 Mich 14 (1997), in turn overruled by *Rory*, 473 Mich 457.[9]

_____

> written, the particular agreement concerned shall be limited to allow its enforcement as far as legally possible." [*Id*. at 16-17.]

[9] Like the trial court, the Court of Appeals did not directly determine whether six months was reasonable or unreasonable, instead focusing on the fact that the plaintiff's waiting 31 months to file suit was too long. The Court of Appeals implied that six months was too short under the facts of that case, given that it addressed a period between 6 months and 31 months in its opinion. *Herweyer*, 212 Mich App at 107-108 ("The savings clause in the contract can be read as providing that the period of limitation shall be the minimum reasonable time in excess of six months."). As explained in more detail later in this opinion, this Court then likewise did not address the reasonableness of the six-month limitations period but assumed that six months was, indeed, too short a limitations period

The Court of Appeals dissent disagreed with the majority that the savings clause could be construed to mean that waiting 31 months to file the lawsuit was unreasonably long and would have concluded that the contract was vague and ambiguous. *Herweyer*, 212 Mich App at 109-110 (NEFF, J., dissenting). Additionally, the dissent expressed that a shortened limitations period would result in premature litigation and that there was unequal bargaining power between an employee and their employer. *Id*. at 110-111. Finally, the dissent agreed with Justice LEVIN's *Camelot* concurrence that parties can contractually shorten limitations periods when they have bargained for the terms of the contract; but, the dissent concluded, that did not occur in *Herweyer*. *Id*. at 112-113, citing *Camelot*, 410 Mich at 141 (LEVIN, J., concurring).

This Court then granted the plaintiff's application for leave to appeal specifically to decide "what limitation period for filing suit is appropriate where the period written into the employment contract is unreasonably short" and whether the contract's savings provision allowed courts to establish the period. *Herweyer*, 455 Mich at 15-16. The Court implicitly assumed that the six-month limitations period in the contract was unreasonably short, holding that the savings provision was "vague and ambiguous," and rather than reforming the limitations period, the Court applied the full limitations period set forth by the statute. *Id*. at 21-22, 24. In a unanimous opinion by Justice KELLY, the Court reiterated the law that a contractually shortened limitations period will be upheld if it is "specific and reasonable" and that *Camelot* set forth the framework for the reasonableness analysis. *Id*. at 20, 24, citing *Camelot*, 410 Mich at 127 (opinion of the Court).

---

when it granted leave in the case and concluded that a court could not reform the shortened time period.

12

*Herweyer* also emphasized the inherently inequitable difference in bargaining power between an employer and employee, calling for "close judicial scrutiny" in employment cases because "[e]mployment contracts differ from [other] contracts." *Id*. at 21. It explained:

> An employer and employee often do not deal at arm's length when negotiating contract terms. An employee in the position of plaintiff has only two options: (1) sign the employment contract as drafted by the employer or (2) lose the job. Therefore, unlike in *Camelot* where two businesses negotiated the contract's terms essentially on equal footing, here plaintiff had little or no negotiating leverage. Where one party has less bargaining power than another, the contract agreed upon might be, but is not necessarily, one of adhesion, and at the least deserves close judicial scrutiny. [*Id*.]

The Court went on to note that "public policy considerations underlying limitation periods are not advanced . . . by encouraging uncertain periods of limitation" and that a statute of limitations is an "objective indicator of what period is reasonable." *Id*. at 22-23. "By enacting a statute of limitation, the Legislature determines the reasonable maximum period a plaintiff can take to file a claim." *Id*. at 24, citing *Nielsen v Barnett*, 440 Mich 1, 8; 485 NW2d 666 (1992).

### C. *TIMKO v OAKWOOD CUSTOM COATING, INC*

Just a few years later, in *Timko*, 244 Mich App at 236-237, the Court of Appeals addressed a contractually shortened limitations period of 180 days in the context of a civil rights claim. The plaintiff agreed to the shortened period when he signed an employment application, and the trial court concluded that this shortened period was reasonable. *Id*. at 236-237. The plaintiff appealed, arguing that the shortened limitations period was unreasonable. *Id*. at 238. The Court of Appeals majority rejected the argument that the limitations period was unreasonable, using the test established in *Herweyer*. *Id*. at 243.

The *Timko* dissent focused on the adhesion contract analysis set forth in *Herweyer*, noting that an employee who is a party to such a contract has no real alternative—i.e., sign or not take the job. *Timko*, 244 Mich App at 245-247 (McDONALD, P.J., dissenting). The dissent concluded that the majority's rationale was flawed because *Herweyer* supported the plaintiff's claim. *Id*. at 247. According to the dissent: "The plaintiff and defendant did not negotiate the contract's terms on an equal footing. The 71-year-old plaintiff had no negotiating leverage and was merely given the choice of signing the agreement or losing the job." *Id*. at 247-248. The plaintiff sought leave to appeal, and this Court denied the application. *Timko v Oakwood Custom Coating, Inc*, 464 Mich 875 (2001).

## D. *RORY v CONTINENTAL INS CO*

This Court then revisited the issue of contractually shortened limitations periods in *Rory*, 473 Mich at 460, 462. There, the plaintiffs were injured in an automobile accident and submitted a claim to the defendant insurer for uninsured motorist benefits. *Id*. at 461-462. The defendant insurer denied the claim because it had not been filed within one year after the accident, as required by the insurance policy. *Id*. at 462. The plaintiffs brought suit, and the defendant insurer moved for summary disposition, arguing that the claim was time-barred by the policy's shortened limitations period of one year.[10] *Id*.

The trial court denied the defendant insurer's motion, holding that the one-year limitations period was an unenforceable adhesion clause, and the Court of Appeals affirmed. *Id*. The defendant insurer sought leave to appeal, and this Court granted the

---

[10] The statute of limitations otherwise available under the law was three years. *Rory v Continental Ins Co*, 262 Mich App 679, 685; 687 NW2d 304 (2004), rev'd 473 Mich 457 (2005), citing MCL 600.5805(10).

application. *Id*. at 464. The plaintiffs argued before this Court that the one-year limitations period was unreasonable, citing *Tom Thomas Org, Inc v Reliance Ins Co*, 396 Mich 588; 242 NW2d 396 (1976), and *Camelot*, 410 Mich 118. *Rory*, 473 Mich at 462, 466-467. This Court rejected the plaintiffs' argument and then overruled *Camelot* and its progeny to the extent that they "abrogate[d] unambiguous contractual terms on the basis of reasonableness determinations[.]" *Id*. at 466-470.

Specifically, *Rory* held that "[w]hen a court abrogates unambiguous contractual provisions based on its own independent assessment of 'reasonableness,' the court undermines the parties' freedom of contract." *Id*. at 468-469. The *Rory* Court went on to hold that "an unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would *violate law* [i.e., recognized traditional contract defenses] *or public policy*." *Id*. at 470 (emphasis added). Furthermore, *Rory* disavowed *Herweyer*'s holding that adhesion contracts required close judicial scrutiny. *Id*. at 477, 488-490.

In dissent, Justice KELLY noted that it has long been a "legitimate exercise for courts to review the reasonableness of contractual clauses that limit the period during which legal actions can be brought." *Id*. at 492 (KELLY, J., dissenting). Further, she chastised the majority for unnecessarily reaching the issue of adhesion contracts, noting that it was "apparently using this dispute as a vehicle to reshape the law on adhesion contracts more closely to its own desires." *Id*. Justice KELLY then outlined the 140-year "long history of judging limitations periods for reasonableness," *id*. at 492-493 (capitalization altered), and noted that "[n]early every court that has considered an uninsured motorist insurance contract that limits the applicable statutory period of limitations has found the limitation

15

unreasonable," *id*. at 496.  She ultimately would have held that the shortened limitations period of one year in the relevant insurance agreement was unreasonable.  *Id*. at 501.

### E.  *CLARK v DAIMLERCHRYSLER CORP*

Finally, in *Clark*, 268 Mich App at 140, a former employee brought a wrongful termination action against their employer more than two years after their final day of work, alleging age discrimination under the ELCRA.  The defendant moved for summary disposition, arguing that the plaintiff's claim was time-barred because the plaintiff had agreed to a six-month limitations period in the employment application, and the trial court granted the defendant's motion.  *Id*. at 140-141.  The plaintiff appealed, and the Court of Appeals, guided by *Rory*, affirmed the trial court's decision, concluding that it was compelled to uphold the unambiguous contract unless it violated public policy or was contrary to law.  *Id*. at 142.  The majority additionally rejected the plaintiff's adhesion argument pursuant to *Rory* as well as the plaintiff's argument that the contract provision was unconscionable.  *Id*. at 143-144.

In dissent, Judge NEFF disagreed with the majority's determination.  She reasoned that the shortened limitations period was unconscionable insofar as it presented "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *Id*. at 145, 149 (NEFF, P.J., dissenting) (quotation marks and citation omitted).  She noted that "[w]hile the principles of freedom of contract may support upholding a *bargained-for* term shortening the period of limitations," the six-month limitations period in plaintiff's employment agreement was

16

not "bargained-for." *Id*. at 151-152, citing *Rory*, 473 Mich at 468-469 (opinion of the Court).

The plaintiff sought leave to appeal, which this Court denied. *Clark v DaimlerChrysler Corp*, 475 Mich 875 (2006).

## F.  SUMMARY OF CASELAW

To recap, there are several strands in the tapestry that make up our caselaw on this topic.  In *Camelot*, we reviewed contractually shortened limitations periods in the nonadhesive, nonemployment context for reasonableness.  *Herweyer* then extended that analysis to shortened limitations periods in employment agreements and implied that six months was not a reasonable limitations period.  The *Herweyer* Court pointed out the concerns associated with adhesion contracts, which are uniquely present in the employment context.  *Timko* ignored *Herweyer*'s implication that six months was unreasonable and instead held that it was reasonable, over a dissent that pointed to the issues inherent in adhesion contracts.  Finally, in a radical departure, *Rory*, a case involving an insurance dispute, stated that adhesion contracts should neither receive close judicial scrutiny nor be subject to a reasonableness analysis.  *Clark* then extended *Rory* to employment agreements with shortened limitations periods.

## IV.  ANALYSIS

As discussed in the previous section, adhesion contracts, particularly in cases involving employment, have a long history in our state of requiring a reasonableness review.  *Clark* erroneously extended *Rory* to employment agreements, which then required that courts refrain from using the *Camelot* factors to determine whether a contractually

17

shortened limitations period was reasonable. Likewise, the Court of Appeals has oversimplified unconscionability challenges to adhesive employment agreements.

These developments in the caselaw of our state were erroneous and, as explained more thoroughly below, are no longer good law to the extent that they conflict with this opinion. As a result, we overrule *Timko* and the cases that followed in which the courts did not specifically analyze the individual facts using the *Camelot* factors. Additionally, adhesive employment agreements that contain a contractually shortened limitations period may also be unconscionable.

## A. *CLARK* WAS WRONG TO EXTEND *RORY* TO ADHESIVE EMPLOYMENT CONTRACTS

To begin our analysis, we first address adhesion contracts and disavow *Clark*'s extension of *Rory*. Every law student is taught that an adhesion contract can be problematic.[11] An adhesion contract is defined as "[a] standard-form contract prepared by one party, to be signed by another party in a weaker position, usu. a consumer, who must essentially either accede (adhere) to the terms or not have a contract at all." *Black's Law Dictionary* (12th ed), p 405. While this Court has not adopted one singular definition of "adhesion contract," our focus has consistently been on the bargaining power between the

---

[11] See, e.g., 17 CJS, Contracts (May 2025 update), § 25 (listing various problems associated with adhesion contracts by stating that "[a]dhesion exists where a party seeking to enforce the contract uses high-pressure tactics or deceptive language in the contract, where there is an inequality of bargaining power between the parties, and the contract inflicts substantive unfairness on the weaker party") (citations omitted).

18

parties.[12]  For instance, our earliest case on the topic quoted the California Supreme Court,

which noted that an

> "adhesion contract . . . entered into between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a 'take it or leave it basis' carries some consequences that extend beyond orthodox implications.  Obligations arising from such a contract inure not alone from the consensual transaction but from the relationship of the parties."  [*Zurich Ins Co v Rombough*, 384 Mich 228, 232-233; 180 NW2d 775 (1970), quoting *Gray v Zurich Ins Co*, 65 Cal 2d 263, 269; 419 P2d 168 (1966).]

The focus of the analysis concerns the power dynamics of the two parties, with the stronger

of the two using their advantage to impose their will on the weaker one.  We have used our

equitable powers to prevent abusive contractual practices.

Shifting to the issue at hand, this Court has never ruled on the application of *Rory*

outside of insurance contracts.  The Court of Appeals, however, extended *Rory*'s holding

to employment contracts in *Clark*, 268 Mich App 138.  The *Clark* Court held, under *Rory*,

---

[12] See *Herweyer*, 455 Mich at 21 ("Where one party has less bargaining power than another, the contract agreed upon might be, but is not necessarily, one of adhesion . . . ."); see also *Morris v Metriyakool*, 418 Mich 423, 471-472; 344 NW2d 736 (1984) (opinion by RYAN, J.) ("A contract of adhesion is a contract which has some or all of the following characteristics: the parties to the contract were of unequal bargaining strength; the contract is expressed in standardized language prepared by the stronger party to meet his needs; and the contract is offered by the stronger party to the weaker party on a 'take it or leave it' basis.  Therefore, the essence of a contract of adhesion is a nonconsensual agreement forced upon a party against his will.") (citation omitted); *id*. at 440 (opinion by KAVANAGH, J.) ("Contracts of adhesion are characterized by standardized forms prepared by one party which are offered for rejection or acceptance without opportunity for bargaining and under the circumstances that the second party cannot obtain the desired product or service except by acquiescing in the form agreement."); *Rembert v Ryan's Family Steak Houses, Inc*, 235 Mich App 118, 157 n 28; 596 NW2d 208 (1999) ("[A] contract is an adhesion contract only if the party agrees to the contract because he has no meaningful choice to obtain the desired goods or services elsewhere.").

that it was compelled to uphold the unambiguous employment contract, that it could not review an adhesion contract with close scrutiny, and that the contract was not unconscionable. *Id*. at 142-144.

We reject the decision of the *Clark* majority. *Rory* involved a shortened limitations period in an insurance policy. Employment disputes are wholly different.[13] As Judge NEFF highlighted in her dissent: "Unlike other contracts contexts, '[a]n employer and employee often do not deal at arm's length when negotiating contract terms. An employee [in plaintiff's position] has only two options: (1) sign the employment contract as drafted by the employer or (2) lose the job.' " *Clark*, 268 Mich App at 149 (NEFF, P.J., dissenting), quoting *Herweyer*, 455 Mich at 21 (alterations by Judge NEFF). "[T]he economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the [inequitable term] stands between the employee and necessary employment, and few employees are in a position to refuse a job because of [such a term]." *Armendariz v Foundation Health Psychcare Servs, Inc*, 24 Cal 4th 83, 115; 6 P3d 669 (2000).[14]

---

[13] It is significant that *Rory* involved an insurance dispute governed by an insurance policy with a shortened limitations period. Insurance disputes differ dramatically from employment disputes. For example, insurance agreements have unique safeguards not found in other contracting contexts. In Michigan, the Legislature has statutorily empowered a commissioner to review insurance contracts for reasonableness. *Rory* itself recognized this nuance. *Rory*, 473 Mich at 461 ("[I]n this case involving an insurance contract, the Legislature has enacted a statute that permits insurance contract provisions to be evaluated and rejected on the basis of 'reasonableness.' "). Thus, *Rory*'s review of the insurance contract at issue was curtailed by the commissioner's approval of the policy. Such is not the case for employment contracts.

[14] We note that other jurisdictions also look to the type of contract at issue when considering the enforceability of a shortened limitations provision. See, e.g., *Creative Playthings Franchising Corp v Reiser*, 463 Mass 758; 978 NE2d 765 (2012) (looking to, among other things, the type of contract to determine whether the shortened limitations period was reasonable); *AJ Tenwood Assoc v Orange Senior Citizens Housing Co*, 200 NJ Super 515,

Judge NEFF aptly highlighted the differences between employment contracts and other areas of law:[15]

> In many cases, shortening the period of limitations to six months in an employment context imposes a hardship on a plaintiff, thwarting legitimate claims. In the case of a job loss, an employee's foremost concern is maintaining a livelihood—pursuing legal action is secondary, both in priority and time. While six months is conceivably sufficient to file certain actions, in many cases, such as this civil rights action, it is insufficient to properly seek legal counsel, investigate, and file a claim. On the other hand, shortening the limitations period to six months is extreme and unnecessary to protect employers from stale claims and to enable employers to defend against claims.

> "Historically, courts have relied on the Legislature to establish limitation periods." *Herweyer*, [455 Mich] at 23. By sanctioning defendant's unilateral provision for a six-month limitations period (presumably imposed on everyone who completes the job application form), the courts are permitting employers to effectively determine the limitations period and thereby supplant the Legislature's determination. There is nothing in the courts' reasoning to prevent all employers in Michigan from now simply inserting the judicially approved six-month limitations period in preprinted employment application forms, effectively "legislating by imposition" a new severely shortened limitations period for employment-related claims. Such legislation by employer imposition overrides well-established contract principles that have evolved for the orderly conduct of

---

524; 491 A2d 1280 (App Div, 1985) (stating that a shortened limitations period must be reasonable and cannot violate public policy, which necessarily depends on the type of contract and nature of the violation); *Digesare Mech, Inc v UW Marx, Inc*, 176 App Div 3d 1449, 1450; 112 NYS3d 306 (2019) (stating that while a six-month limitations period had previously been found to be reasonable, the "circumstances, not the time, must be the determining factor") (quotation marks and citation omitted); *Woodward v Farm Family Cas Ins Co*, 796 A2d 638, 642-643 (Del, 2002) (noting that one-year limitations periods for insurance contracts have been found to be reasonable).

[15] Judge NEFF's dissenting analysis was focused on the unconscionability of the agreement, which is not surprising given that it was decided post-*Rory*. The same factors she set forth can also be used in a reasonableness analysis. We address unconscionability later in this opinion.

business and is contrary to longstanding public policy. [*Clark*, 268 Mich
App at 155-156 (NEFF, P.J., dissenting).]

Judge NEFF's prediction came to light. A large swath of employers now use boilerplate agreements to impose shortened limitations periods on their entire workforce.[16] We agree with Judge NEFF and therefore overrule *Clark*.

Although Justice ZAHRA and our Court of Appeals prefer to rely on *Rory*, see *Rayford*, unpub op at 3, we believe *Rory*'s observations are inapposite here. The *Rory* majority concluded: "[I]t is of no legal relevance that a contract is or is not described as 'adhesive.' In either case, the contract is to be enforced according to its plain language." *Rory*, 473 Mich at 489. However, the *Rory* Court overextended itself in its attempt to dictate the enforceability of all contracts regardless of subject matter. While the *Rory* majority might have intended for its opinion to apply broadly, the issue raised in the defendant's brief was one focused on the insurance context:

> [The defendant] contracted with the plaintiffs for certain insurance coverages. The unambiguous contractual language of the policy requires that the insureds claiming uninsured motorist benefits must do so within one year from the date of the accident or bring suit within one year from the date of the accident for these benefits. It is undisputed that the plaintiffs did not make a claim for uninsured motorist benefits within the one year condition contained in the contract. Nor did plaintiffs file suit within one year under

---

[16] See, e.g., *McMillon v Kalamazoo*, unpublished per curiam opinion of the Court of Appeals, issued January 21, 2021 (Docket No. 351645), rev'd in part and vacated in part 511 Mich 855 (2023); *Dzurka v MidMichigan Med Ctr-Midland*, unpublished per curiam opinion of the Court of Appeals, issued January 22, 2019 (Docket No. 343162); *French v MidMichigan Med Ctr-Gladwin*, unpublished per curiam opinion of the Court of Appeals, issued March 23, 2023 (Docket No. 360239); *Gumm v AK Steel Corp*, opinion of the United States District Court for the Eastern District of Michigan, issued September 26, 2023 (Case No. 21-cv-12441), aff'd Case No. 24-1767 (CA 6, March 18, 2025). Each of these cases held that the plaintiff-employee's claim failed because of a boilerplate employment agreement with a shortened limitations period.

an alternative requirement of the contract's conditions. Did the trial court commit error requiring reversal by denying [the defendant's] motion for summary disposition based on the plaintiffs' failure to make a timely claim for uninsured motorist benefits? [Brief of Defendant-Appellant Continental Insurance Company (December 15, 2004) (Docket No. 126747) at vii (capitalization altered; boldface omitted).]

*Rory* was clear: "[A]re insurance contracts subject to a standard of enforcement different from that applicable to other contracts[?]" *Rory*, 473 Mich at 460.

*Rory*'s language extending its holding beyond insurance contracts constitutes nonbinding dicta. "Dictum is a judicial comment that is not necessary to the decision in the case." *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014). We have said that " '[w]hen a court of last resort intentionally takes up, discusses and decides a question *germane* to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision.' " *Detroit v Mich Pub Utilities Comm*, 288 Mich 267, 299; 286 NW 368 (1939), quoting *Chase v American Cartage Co*, 176 Wis 235, 238; 186 NW 598 (1922). However, in the same opinion we recognized that observation as contingent on whether the question is " 'of general interest[,] is supposed to be involved[,] . . . *and is fully discussed and submitted by counsel . . . .*' " *Mich Pub Utilities Comm*, 288 Mich at 300, quoting *Alexander v Worthington*, 5 Md 471, 488-489 (1854) (emphasis added); see also *McNally v Bd of Canvassers of Wayne Co*, 316 Mich 551, 557; 25 NW2d 613 (1947) ("Such words [from *Detroit v Mich Pub Utilities Comm*] are to be considered as explained or modified by the quotations immediately following from Wisconsin and Maryland cases as to the matter being germane to the issue and the fullness of the discussion and actual submission by the parties.").

23

The issue is therefore whether the *Rory* Court's traverse beyond insurance contracts into *all* contract law was "germane" to the controversy before it. The issue presented in *Rory*, which was the issue upon which this Court granted the defendant's application for leave to appeal, did not purport to implicate contracts unrelated to auto insurance. Accordingly, broad holdings outside of the insurance context were not germane to the controversy, especially in light of the fact that the litigants did not brief the issue. See *Quinton v Gen Motors Corp*, 453 Mich 63, 74; 551 NW2d 677 (1996) (opinion by LEVIN, J.) ("It is well settled that issues neither briefed nor argued cannot be definitively decided, and that the Court's pronouncements, especially dicta, without briefing and argument, are not stare decisis.").[17] This is especially so when it comes to employment contracts, which are radically different from insurance contracts.

Therefore, we conclude that *Rory*'s language purporting to reach beyond insurance contracts cannot reach adhesive employment agreements because such an extension constitutes nonbinding dicta.

## B. ADHESIVE EMPLOYMENT AGREEMENTS AND SHORTENED LIMITATIONS PERIODS ARE SUBJECT TO A REASONABLENESS ANALYSIS

Because we reject *Rory*'s application here, we must next determine what analysis courts should engage in when reviewing adhesive employment contracts. The dissent

---

[17] See also *Central Va Community College v Katz*, 546 US 356, 363; 126 S Ct 990; 163 L Ed 2d 945 (2006) ("For the reasons stated by Chief Justice Marshall in *Cohens v. Virginia*, 6 Wheat. 264, 5 L.Ed. 257 (1821), we are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated. See *id*., 6 Wheat., at 399-400 ('It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision').").

24

questions what "close judicial scrutiny" means. This is not difficult to answer. We hold that in these cases, the pre-*Rory* reasonableness analysis should apply.[18] As applied to a contractually shortened limitations period, *Camelot*'s reasonableness test requires

> [1] that the claimant have sufficient opportunity to investigate and file an action, [2] that the time not be so short as to work a practical abrogation of the right of action, and [3] that the action not be barred before the loss or damage can be ascertained. [*Camelot*, 410 Mich at 127.]

In other words, a contractually shortened limitations period is reasonable if "the party [subject to it] has . . . [the] opportunity . . . to try his right in the courts." Cooley, Constitutional Limitations (2d ed), p *366.

This reasonableness analysis is consistent with this state's 140-year-old jurisprudence examining limitations periods for reasonableness. *Rory*, 473 Mich at 493 (KELLY, J., dissenting) (" '[T]he legislative authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal remedy, all remedy whatsoever may be taken away. . . . It is of the essence of a law of limitation

---

[18] The dissent argues that our decision "upsets legitimate freedom and reliance interests throughout our state's economy" and speculates that our opinion could potentially destroy bargained-for consideration of a contract. However, our decision is focused on boilerplate employment agreements where the ability to change or reject offered terms in a contract is effectively curtailed by its adhesive nature—take the contract as-is or lose the job. There are, of course, scenarios where conditions agreed to by an employee are not adhesive in nature. For example, if a CEO gives up certain rights as part of a contract negotiation that includes a severance package, the agreement would not be adhesive. Only if a contract is deemed adhesive does the contract warrant close judicial scrutiny and become subject to the *Camelot* reasonableness analysis. While a boilerplate contract in an employment case such as this one will likely require courts to conduct a reasonableness analysis because of its adhesive nature, we emphasize that this requirement does not inherently invalidate the challenged contract provisions. Courts will still need to review the challenged terms for reasonableness and may ultimately rule in favor of the employer based on a finding that the terms, though boilerplate and adhesive in nature, are reasonable.

that it shall afford a reasonable time within which suit may be brought[,] and a statute that fails to do this cannot possibly be sustained as a law of limitations . . . .' "), quoting *Price v Hopkin*, 13 Mich 318, 324-325 (1865) (alterations and ellipses added by Justice KELLY).

We see no reason to treat a contractually shortened limitations period any differently than *Price*, wherein we examined a statute of limitations set by the Legislature.[19] In fact, it would be odd indeed that a statute passed by the Legislature could be examined for reasonableness to ensure fairness but a contractually shortened limitations period that modifies the legislatively enacted period in a boilerplate contract could not.[20]

In the narrow context of adhesion contracts, we believe the common-law rule that a contract should be reviewed for reasonableness is also the better rule. As the dissent notes, this Court followed the general rule that contractual provisions are reviewed for

---

[19] Justice ZAHRA complains that this is a misunderstanding of *Price*—that the rule there narrowly concerned a retroactive change to a statute of limitations. However, we find this observation reductive. As Justice COOLEY explained, "[s]tatutes of limitation . . . fix upon a reasonable time within which a party is permitted to bring suit for the recovery of his rights . . . ." Cooley, Constitutional Limitations (2d ed), p *365. "All statutes of limitation, also, must proceed on the idea that the party has full opportunity . . . to try his right in the courts." *Id*. at *366. Cf. *Richmond v Robinson*, 12 Mich 193, 202 (1864) ("Time cannot be made essential in a contract, merely by so declaring, if it would be unconscionable to allow it. . . . [I]f [such a] stipulation is not reasonable, courts will not regard it.").

[20] Justice KELLY similarly highlighted this in her *Rory* dissent when noting that the "same rule and reasoning were applied to limitations periods created both by a contract and by a statute" and that this principle is generally accepted nationwide. *Rory*, 473 Mich at 493-494 (KELLY, J., dissenting), citing *Longhurst v Star Ins Co*, 19 Iowa 364, 370-371 (1865); *Gulf, C & S F R Co v Trawick*, 68 Tex 314, 319-320; 4 SW 567 (1887); *Gulf, C & S F R Co v Gatewood*, 79 Tex 89, 94; 14 SW 913 (1890); *Sheard v US Fidelity & Guaranty Co*, 58 Wash 29, 33-34; 107 P 1024 (1910); *Pacific Mut Life Ins Co v Adams*, 27 Okla 496, 503; 112 P 1026 (1910); *Fitger Brewing Co v American Bonding Co of Baltimore*, 127 Minn 330; 149 NW 539 (1914); *Gintjee v Knieling*, 35 Cal App 563, 565-566; 170 P 641 (1917); *Columbia Security Co v Aetna Accident & Liability Co*, 108 Wash 116, 120; 183 P 137 (1919); *Page Co v Fidelity & Deposit Co of Md*, 205 Iowa 798; 216 NW 957 (1927).

reasonableness as far back as *Tom Thomas*, 396 Mich at 592 ("The general rule, absent statute, is that a provision in a policy of insurance limiting the time for bringing suit is valid if reasonable even though the period is less than that prescribed by otherwise applicable statutes of limitation."), citing Anno: *Validity of Contractual Time Period, Shorter than Statute of Limitations, for Bringing Action*, 6 ALR3d 1197 (1966). *Rory* was a dramatic break from this precedent and from the general rule that limitations periods would be enforced only if reasonable.

Indeed, reviewing contractual provisions for reasonableness is the common rule in other jurisdictions—not the one-off, unworkable standard that the dissent makes it out to be.[21] It also simply makes little sense to allow employers to subject employees to unreasonably short limitations periods that might, in practice, preclude statutory claims. "[I]t is axiomatic that our courts have the constitutional authority to change the common law in the proper case." *North Ottawa Community Hosp v Kieft*, 457 Mich 394, 403 n 9; 578 NW2d 267 (1998), citing *Placek v Sterling Hts*, 405 Mich 638, 656-657; 275 NW2d

---

[21] 54 CJS, Limitations of Actions (May 2025 update), § 64 (discussing reasonableness in relation to public policy and stating that "[w]hile not favored by some courts, contractual provisions shortening the time to commence an action are generally valid, so long as a reasonable time is afforded," that "a contractual period of limitations must not be unreasonably short," and that "[a]ny contractual reduction in a limitations period that is unreasonable or not subject to negotiation by the parties, such as in a contract of adhesion, will be unenforceable"), citing *Bradshaw v Chandler*, 916 NE2d 163 (Ind, 2009); *Angel v Reed*, 119 Ohio St 3d 73; 2008-Ohio-3193; 891 NE2d 1179 (2008); *Hartford Fire Ins Co v Clark*, 562 F3d 943 (CA 8, 2009); *Koert v GE Group Life Assurance Co*, 231 F Appx 117 (CA 3, 2007); *In re Cotton Yarn Antitrust Litigation*, 505 F3d 274 (CA 4, 2007); *Western Filter Corp v Argan, Inc*, 540 F3d 947 (CA 9, 2008); *Albany Med Ctr v Preferred Life Ins Co of NY*, 851 NYS2d 843 (2008); *McKee v AT & T Corp*, 164 Wash 2d 372; 191 P3d 845 (2008) (en banc); *Creative Playthings*, 463 Mass 758.

511 (1979). We now reestablish that reasonableness review is used for contractually shortened limitations periods in adhesive employment contracts.[22]

In short, *Rory* completely disregarded our prior caselaw requiring that shortened limitations periods be reviewed for reasonableness, effectively overruling *Camelot* and 140 years of precedent following basic contract-formation principles. *Rory* likewise rejected *Herweyer*—an employment case—despite the fact that *Rory* involved an insurance dispute. Therefore, we reject *Rory*'s extension to adhesive employment agreements. We restore *Herweyer* to its proper place as applied to adhesive employment agreements. Adhesion contracts with provisions shortening the statute of limitations in the employment context are subject to heightened judicial scrutiny to determine whether the provisions are reasonable. See *Herweyer*, 455 Mich at 20-21.

_____

[22] Justice ZAHRA argues that we conflate our analysis of "reasonableness" as applied to shortened limitations periods with the "close judicial scrutiny" required for adhesion contracts. In *Herweyer*, this Court relied on *Camelot* to determine that, as applied to shortened limitations periods, our jurisprudence required that reasonableness was the correct level of close judicial scrutiny to use. *Herweyer*, 455 Mich at 20 ("[P]arties may contract for a period of limitation shorter than the applicable statute of limitation. . . . The limitation period must be reasonable."), citing *Camelot*, 410 Mich at 125-126. The *Herweyer* Court then went on to highlight Justice LEVIN's concerns that " '[t]he rationale of [that] rule allowing parties to contractually shorten statutory periods of limitation is that the shortened period is a bargained-for term of the contract. . . . In the case of an adhesion contract, however, where the party ostensibly agreeing to the shortened period has no real alternative, this rationale is inapplicable.' " *Herweyer*, 455 Mich at 20-21, quoting *Camelot*, 410 Mich at 141 (LEVIN, J., concurring). We are bound by that decision. We do not today take up the question of what level of close judicial scrutiny is warranted for a different challenged provision in an adhesive employment agreement because that is beyond the scope of the issue before us. But we do note that the Court of Appeals has applied the reasonableness standard to adhesive employment agreement challenges in other contexts. See *Rembert*, 235 Mich App at 157 ("Courts will not invalidate contracts as adhesion contracts where the challenged provision is reasonable.").

28

In light of our holding, we also must overrule *Timko*. Post-*Herweyer*, the Court of Appeals determined that a shortened limitations period reducing the three-year statute of limitations for civil rights claims to 180 days was reasonable. *Timko*, 244 Mich App at 244-245 (opinion of the Court). The *Timko* majority believed that the *Camelot* factors favored a determination of reasonableness, *id*. at 239-240, 245, concluding that "the 180-day period of limitation afforded plaintiff adequate time to investigate and file his age discrimination claim," *id*. at 242. Notably, the *Timko* majority did not actually conduct any analysis on how the *Camelot* factors applied to the parties.

The difference between an employee having three years to file a lawsuit, as opposed to just six months, cannot be understated. Prospective plaintiffs and defendants both depend on the reliability and consistency of a statute of limitations when planning for and moving forward with a case. Plaintiffs depend on the time provided in statutes of limitations to gather evidence, hire an attorney, and, in some cases, even realize they have been injured. Meanwhile, defendants trust that after the time period set forth in a statute of limitations has run, they will no longer have a potential case looming over them.

When limitations periods are created and changed on a case-by-case basis through an employment application or, as in this case, an employee handbook acknowledgment, the employee's ability to protect their legislatively and constitutionally protected right to be free from discrimination may be significantly curtailed. The claims period is not only abbreviated, but the purpose of these statutes—to hold employers accountable—may be curtailed as well, depending on how short the contractual limitations period is. Given the severe effects on both plaintiffs and defendants, courts must be cautious when examining employment contracts that shorten these periods.

To be clear, we do not hold that a six-month limitations period is unreasonable under *Herweyer* and *Camelot*—no party briefed that question. Moreover, the record here is not developed in this regard because defendant prevailed on its motion for summary disposition under MCR 2.116(C)(7). However, we overrule *Timko* because it failed to apply the *Camelot* factors to the record before it when it held that a six-month limitations period was reasonable. In light of our holdings in this case, courts must now first determine whether a challenged employment agreement is adhesive and, if so, apply *Camelot* to determine whether a shortened limitations period is reasonable.

## C. UNCONSCIONABILITY

Our Court's concern with the power dynamics in contract negotiations is not a new phenomenon. More than 145 years ago, this Court explained that "[p]arties may make and carry out any agreement they please which does not affect the public or the rights of third persons, but in case of dispute they must not expect the courts to enforce any unconscionable bargain they may have thought proper to make." *Myer v Hart*, 40 Mich 517, 523 (1879). Despite claiming that courts need not afford adhesion contracts any special deference upon review, the *Rory* majority acknowledged that traditional contract defenses—including unconscionability—remained. *Rory*, 473 Mich at 470 (opinion of the Court).

In Michigan, " '[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " *Allen v Mich Bell Tel Co*, 18 Mich App 632, 637-638; 171 NW2d 689 (1969), quoting *Williams v Walker-Thomas Furniture*

30

*Co*, 121 US App DC 315, 319; 350 F2d 445 (1965).  In other words, in order for a contract to be unconscionable, it must be procedurally and substantively unconscionable. *Northwest Acceptance Corp v Almont Gravel, Inc*, 162 Mich App 294, 302; 412 NW2d 719 (1987).[23]

Procedural unconscionability exists when a weaker party has no "realistic alternative" but to accept the term.  *Allen*, 18 Mich App at 637.[24]  Justice ZAHRA strictly interprets this point to mean that a plaintiff must have no alternative whatsoever.  However,

---

[23] According to *Black's Law Dictionary*, unconscionability is defined as:

> **1.** Extreme unfairness. • Unconscionability is normally assessed by an objective standard: (1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party. **2.** The principle that a court may refuse to enforce a contract that is unfair or oppressive because of procedural abuses during contract formation or because of overreaching contractual terms, esp. terms that are unreasonably favorable to one party while precluding meaningful choice for the other party.  [*Black's Law Dictionary* (12th ed).]

And the Restatement of Contracts states the following: "If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." Restatement Contracts, 2d, § 208.

[24] We observe that numerous sister state courts have recognized the overlap between adhesion contracts and the procedural element of the unconscionability analysis.  See, e.g., *Day v CTA, Inc*, 375 Mont 79, 81; 2014 MT 119; 324 P3d 1205 (2014) ("A contract is unconscionable if it is a contract of adhesion and if the contractual terms unreasonably favor the drafter."); *Damico v Lennar Carolinas, LLC*, 437 SC 596, 614; 879 SE2d 746 (2022) ("The distinction between a contract of adhesion and unconscionability is worth emphasizing: *adhesive contracts are not unconscionable in and of themselves **so long as the terms are even-handed**.*"); *State ex rel Richmond American Homes of W Va, Inc v Sanders*, 228 W Va 125, 137; 717 SE2d 909 (2011); *Armendariz*, 24 Cal 4th at 113; *Narayan v Ritz-Carlton Dev Co, Inc*, 135 Hawaii 327, 336; 350 P3d 995 (2015), vacated on other grounds 577 US 1056 (2016).

a closer look at our historical precedent proves that we have looked to factors such as the sophistication of the parties, the parties' relative market power and economic status, and a party's education in a field. See, e.g., *Gillam v Mich Mtg-Investment Corp*, 224 Mich 405, 409; 194 NW 981 (1923); *Styninger v Courtright*, 229 Mich 399, 403-404; 201 NW 482 (1924).[25] There are numerous factors that may render a contract procedurally unconscionable. See 17A Am Jur 2d, Contracts (May 2025 update), § 272.

Substantive unconscionability requires courts to analyze the reasonableness of the challenged term. *Id*. at 637-638. A contract provision is substantively unreasonable if the inequity "shock[s] the conscience."[26] *Gillam*, 224 Mich at 409 (quotation marks and citation omitted).

---

[25] See also *Platt v Platzki*, 277 Mich 700, 704-705; 270 NW 192 (1936) (concerning a deal between a plaintiff and his "aged parents"); *Ferguson v Perry Coal Co*, 213 Mich 197, 200; 181 NW 980 (1921) (holding that a risky contract " 'entered into by two grown up business men' " was not unconscionable); *Reo Motor Car Co v Young*, 209 Mich 578, 588; 177 NW 249 (1920) (observing that nothing the plaintiff did "was designed to put [the] defendant in a frame of mind where an unconscionable contract could be procured from him"); *Coveney v Pattullo*, 130 Mich 275, 279-282; 89 NW 968 (1902) (holding a contract for attorney fees unconscionable where the defendant was imprisoned without access to his own lawyer); but see *Rice v Terrill*, 231 Mich 104; 203 NW 851 (1925) (holding a contract unconscionable without reference to a power dynamic between the parties).

[26] The dissent finds our statements on this matter "gratuitous" based on a mistaken conflation of the *Camelot* "reasonableness" analysis for an adhesion contract with "substantive unreasonableness" in an unconscionability analysis. As noted earlier, a contract provision is only substantively unreasonable if the inequity "shock[s] the conscience." *Gillam*, 224 Mich at 409 (quotation marks and citation omitted). This is separate from the *Camelot* reasonableness test, *Camelot*, 410 Mich at 127 ("The boundaries of what is reasonable under the general rule require [1] that the claimant have sufficient opportunity to investigate and file an action, [2] that the time not be so short as to work a practical abrogation of the right of action, and [3] that the action not be barred before the loss or damage can be ascertained."), which is only revived in the narrow context of adhesive employment agreements with shortened limitations provisions. We have had little occasion to address what it means to "shock the conscience" or whether that statement

In *Clark*, the majority held that the shortened limitations period passed procedural and substantive muster and was not unconscionable. *Clark*, 268 Mich App at 144 (opinion of the Court). Judge NEFF disagreed, believing that the shortened limitations period "place[d] plaintiff at a severe disadvantage in seeking redress for wrongs and [was] unquestionably advantageous to defendant by permitting it to wholly avoid employee claims." *Id*. at 154 (NEFF, P.J., dissenting). She highlighted that the defendant took advantage of the plaintiff's situation and that such circumstances fall within the defense of unconscionability. *Id*.

## V. APPLICATION

Applying *Camelot* and *Herweyer* to the instant case, we hold that the employee here lacked bargaining power when she was presented with a boilerplate employment agreement that contained a shortened limitations period of 180 days. The contract was adhesive and, as a result, warrants close judicial scrutiny of the challenged shortened limitations provision. We therefore remand the matter to the trial court so that the record can be further developed to determine the reasonableness of the shortened limitations period and whether the provision was unconscionable.

---

of the rule continues to maintain utility since *Gillam*. And the parties do not present us with an opportunity to do so here. That being said, we note the presence of several alternative formulations of the rule. See, e.g., 8 Williston, Contracts (4th ed, May 2025 update), § 18:10 ("unreasonably favorable"); *State ex rel King v B & B Investment Group, Inc*, 2014-NMSC-024, ¶ 32; 329 P3d 658 (2014) ("grossly unfair") (quotation marks and citation omitted); *Armendariz*, 24 Cal 4th at 114 ("overly harsh or one-sided") (quotation marks and citation omitted).

## A.  ADHESION

It is undisputed that approximately one week after her employment began, plaintiff was asked to sign an acknowledgment of the employee handbook, which contained the shortened limitations period of 180 days for bringing any lawsuit against her employer. Not only does the employer defendant not dispute this fact, but it relied and prevailed on this fact when it filed its motion for summary disposition under MCR 2.116(C)(7).

Again, the definition of "adhesion contract" is "[a] standard-form contract prepared by one party, to be signed by another party in a weaker position, usu. a consumer, who must essentially either accede (adhere) to the terms or not have a contract at all." *Black's Law Dictionary* (12th ed).  Many employees who need a job are in a weaker position than the employer, who can fire or refuse to hire the employee if the employee tries to negotiate or refuses to sign the agreement.  "An employee in the position of plaintiff has only two options: (1) sign the employment contract as drafted by the employer or (2) lose the job." *Herweyer*, 455 Mich at 21; see also *Timko*, 244 Mich App at 248 (MCDONALD, P.J., dissenting).  Accordingly, we conclude that the contract deserves close judicial scrutiny.

## B.  REASONABLENESS

We turn next to whether the 180-day limitations period was reasonable under the factors set forth in *Camelot*.  Under *Camelot*, a shortened limitations period "is reasonable if (1) the claimant has sufficient opportunity to investigate and file an action, (2) the time is not so short as to work a practical abrogation of the right of action, and (3) the action is not barred before the loss or damage can be ascertained." *Herweyer*, 455 Mich at 20, citing *Camelot*, 410 Mich at 127.

34

First, we examine whether the shortened limitations period of 180 days here provides a plaintiff with sufficient opportunity to investigate and file an action. The facts of this particular case inform the determination of whether this factor weighs in favor of the six-month limitations period being reasonable. The record is not developed in this regard because defendant prevailed on its motion for summary disposition under MCR 2.116(C)(7). Plaintiff was never able to dive into the facts surrounding her actions after her termination and the timing of hiring her attorney almost a year later.

That said, we note that there are many considerations when evaluating the first *Camelot* factor.[27] For this reason, we caution trial courts against taking a one-size-fits-all approach to determine whether the length of a particular limitations period is enforceable. While it might be possible for some employees to take action within 180 days of a termination, "what is possible" is not the inquiry. The inquiry is reasonableness.

Next, we examine whether the shortened time period "is not so short as to work a practical abrogation of the right of action . . . ." *Herweyer*, 455 Mich at 20, citing *Camelot*, 410 Mich at 127. Here, while it is not entirely clear when plaintiff retained counsel, based on the letter sent to defendant, it was within a year of plaintiff's termination—well within the three-year statute of limitations she believed governed her claim. Plaintiff, in fact, did not even learn about the contractually shortened limitations period until defendant filed its

---

[27] For example, a terminated employee may have suffered mental health issues, may have needed to quickly get another job and just did not have time to hire an attorney, may have had a sick child or family member for whom they were caring that prevented focus upon the termination, or may have been saving up money to hire an attorney. These examples would all seem to provide valid reasons as to why a limitations period of 180 days would prevent an employee from investigating and filing an action.

motion for summary disposition.[28]  The court should also consider what steps a plaintiff must take in order to file a claim and how long those steps generally take.[29]  In short, the facts of this particular case help inform our inquiry of whether a six-month limitations period generally works a practical abrogation of plaintiff's right of action.

Finally, *Camelot* requires us to examine whether the shortened limitations period provides enough time for a plaintiff to assess their damages.  While damages in an employment action are typically tied to lost wages (which are easily determined by reference to the date of termination), other claims may also be included, such as damages

---

[28] Plaintiff made a request under the ERKA, but defendant failed to provide a copy of the Acknowledgment to plaintiff prior to filing its motion for summary disposition.

[29] We note that at least one other state supreme court has held that shortened limitations periods for civil rights claims are per se unreasonable.  In *Rodriguez*, 225 NJ at 346-347, the New Jersey Supreme Court was asked to address "whether the Law Against Discrimination (LAD), [NJ Stat Ann 10:5-1 to 10:5-49]—a law established to fulfill a public-interest purpose—can be contravened by private agreement" and held that employers may not abrogate, by private contract, the statute of limitations applicable to the state's employment discrimination law.  In reaching its conclusion, the *Rodriguez* court focused on two important considerations that are helpful to our own analysis: (1) "shortening the time permitted for bringing an LAD action in Superior Court directly impacts and undermines the integrated nature of the statutory avenues of relief and the election of remedies that are substantively available to victims of discrimination under the LAD" and (2) as a practical matter, "a statute of limitations period short of two years effectively eliminates claims." *Id*. at 362-363.  In *Rodriguez*, the court looked to the time it takes to find and hire an attorney; the time it takes to realize one has been discriminated against; and the time it takes for a workplace to receive, investigate, and respond to workplace complaints. *Id*. at 346-347.

The record before us does not contain enough facts or data for us to determine whether a shortened limitations period of 180 days is per se unreasonable in boilerplate employment agreements.  While this case presents one anecdote of a case dismissed much earlier than the three-year limitations period provided by statute, this Court would require more extensive data to know whether a shortened limitations period of 180 days effectively denies employees redress on a regular basis.

for emotional distress. These could be harder to discern and could take more time. A reduction from 3 years to a mere 180 days is drastic and very well could affect a plaintiff's ability to assess their damages. Courts must consider all types of damages associated with the particular claim when making a determination regarding this factor.

Based on the foregoing, the *Camelot* factors clearly require the development of a full record. Because plaintiff never had the opportunity to conduct discovery and the trial court did not address the issue, we remand the matter to the Macomb Circuit Court.

## C. UNCONSCIONABILITY

Finally, we note that the agreement here may also be unconscionable. In order for a contract to be considered unconscionable, it must be both procedurally and substantively unconscionable. Here, plaintiff argued that the shortened limitations period was procedurally unconscionable because at the time she signed the Acknowledgment, she "had no realistic alternative to employment with defendant." *Rayford*, unpub op at 4. The Court of Appeals rejected this argument, stating instead that plaintiff did not provide evidence that she lacked other employment options. *Id*. at 4-5. Further, the Court of Appeals concluded that the agreement was not substantively unconscionable because "Michigan courts have recognized that employment agreements that shorten limitations periods are neither inherently unreasonable, nor so gross as to shock the conscious [sic]." *Id*. at 5, citing *Clark*, 268 Mich App at 144 (opinion of the Court).

We find this analysis erroneous. As noted earlier in this opinion, we do not agree that, in order to prove the existence of procedural unconscionability, an employee must demonstrate that they do not have any other employment options. As *Herweyer* aptly

37

outlined, this leaves the employee with one of two options: "(1) sign the employment contract as drafted by the employer or (2) lose the job." *Herweyer*, 455 Mich at 21. The ability to quit one's job is not, in and of itself, a meaningful or realistic alternative. This is not a choice for an employee presented with a boilerplate agreement. While the ability to walk away from the proverbial contract-creation table might work in some contexts, it does not work well in the context of a boilerplate employment agreement.

Employees must maintain employment to make a living. Saying that an employee can simply quit a job is incredibly obtuse to the reality that almost everyone needs employment to support themselves and others. Our caselaw states that if one party to a contract possesses little to no bargaining power, the contract is procedurally unconscionable. *Allen*, 18 Mich App at 637; *Liparoto*, 284 Mich App at 30. For these reasons, based on the record presented, it is possible that the contract is procedurally unconscionable. But the parties were unable to litigate this below. Thus, there are lingering questions to be resolved by the circuit court that require us to remand for consideration of this issue.[30]

As to substantive unconscionability, the Court of Appeals here relied upon *Clark*. We have overruled *Clark*. Accordingly, the circuit court must also determine whether the

---

[30] We note that reaching the unconscionability analysis may be dependent upon the outcome of the adhesion contract analysis. If the trial court determines that the shortened 180-day limitations period contained in the adhesion contract here is, in fact, reasonable, then it will need to consider plaintiff's argument that the agreement is unconscionable. Alternatively, the trial court judge might choose to immediately analyze unconscionability, and if that analysis results in a determination that the challenged provision is not unconscionable, the trial court will still need to revisit the *Camelot* reasonableness framework. We take no position on the outcome of the unconscionability analysis and leave that for the trial court to reach, if necessary, on remand.

shortened limitations period was unreasonable, and therefore substantively unconscionable, in the first instance.

The unconscionability analysis is similar to the reasonableness analysis for analyzing adhesion contracts. In her *Clark* dissent, Judge NEFF deemed six months an insufficient time to seek legal counsel, investigate a claim, and file a claim. *Clark*, 268 Mich App at 155 (NEFF, P.J., dissenting). She also noted that the six-month limitations period was "extreme and unnecessary to protect employers from stale claims and to enable employers to defend against claims." *Id*. While we tend to agree with her reasoning, the record in this case is not complete, and so we cannot yet make this determination.[31] We therefore remand this case to the Macomb Circuit Court for further proceedings on both procedural and substantive unconscionability.[32]

---

[31] As Justice ZAHRA points out, this part of the *Clark* dissent discussed public policy, and we, too, are using public policy to reach our decision in this case. The same points made in the *Clark* dissent by Judge NEFF, despite being rooted in public policy, can also be used to determine whether a contract is adhesive or unconscionable. While we do not decide this case on public policy grounds, it is well understood that our Constitution and statutes broadly favor protecting individuals from discrimination and, more specifically, favor protecting individuals from employment discrimination. See, e.g., Const 1963, art 1, § 2 ("No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation."); MCL 37.2102(1) ("The opportunity to obtain employment . . . without discrimination . . . is recognized and declared to be a civil right."). Thus, when balancing conflicting public policies, while Justice ZAHRA prefers his own "bedrock legal principle" of "freedom of contract" even for adhesive employment contracts, we instead recognize that our law provides for closer scrutiny.

[32] Though Justice ZAHRA argues that plaintiff's reasonableness argument is unpreserved, he concedes that plaintiff did argue that the contract was adhesive and unconscionable when she cited *Herweyer* and *Camelot* in her briefs before this Court and the Court of Appeals. The dissent seeks to split hairs between what it assumes are discrete legal topics. Whether to label a contract adhesive, whether to review a contractual provision for

## VI. CONCLUSION

In sum, we hold that the shortened limitations period contained in plaintiff's employment agreement was adhesive. We overrule the Court of Appeals in *Clark*, limit *Rory* to insurance contract cases, and restore *Camelot* and *Herweyer*. We also overrule *Timko* to the extent that it could be interpreted as accepting a shortened limitations period of 180 days as per se reasonable.

We remand this case to the Macomb Circuit Court for it to examine the reasonableness of the shortened limitations period of 180 days. Further, we remand this case for further proceedings to determine whether the term was unconscionable. Finally, we note that if the shortened limitations provision is either unreasonable or unconscionable, *Herweyer* provides that the full three-year limitations period set forth by statute governs the case.[33] *Herweyer*, 455 Mich at 16 ("[W]hen the period of limitation in an employment

---

reasonableness, and whether a contractual provision is unconscionable are all interconnected. Plaintiff need not recite magic words to preserve her issues when she clearly made the argument.

[33] The dissent argues that plaintiff was "certainly free to present evidence showing that she had no realistic alternative . . . ." However, plaintiff did challenge the enforceability of the contractual limitations provision in her response in opposition to defendant's motion for summary disposition. In that response, under Section (C)(1), "The Shortened Limitations Period is Invalid and an Unconscionable Contract of Adhesio[n]," plaintiff made the argument that the employee handbook acknowledgment sheet with the limitations period was signed after she was hired, and therefore, she did not have the ability to negotiate the terms, nor was she provided any additional consideration. Furthermore, she argued that this agreement shocked the conscience. While Justice ZAHRA concedes that this case was dismissed by summary disposition—presumably under MCR 2.116(C)(7)—and is correct that plaintiff was able to make some substantive argument regarding the unconscionability of the contract, he fails to consider that defendant's motion was made pre-discovery, therefore making it difficult for plaintiff, at that stage, to present additional evidence.

40

contract is unreasonably short, the applicable period is that established by statute."); MCL 600.5805(2).

We reverse the judgment of the Court of Appeals and remand this case to the Macomb Circuit Court for further proceedings. We do not retain jurisdiction.

Elizabeth M. Welch
Megan K. Cavanagh
Richard H. Bernstein
Kyra H. Bolden
Kimberly A. Thomas

41

STATE OF MICHIGAN

SUPREME COURT

TIMIKA RAYFORD,

      Plaintiff-Appellant,

v

No. 163989

AMERICAN HOUSE ROSEVILLE I, LLC,
doing business as AMERICAN HOUSE
EAST I and AMERICAN HOUSE,

      Defendant-Appellee.

_____

CAVANAGH, C.J. (*concurring*).

I agree with nearly every point in the majority opinion.  I question, though, the majority's conclusion that the holdings in *Rory v Continental Ins Co*, 473 Mich 457; 703 NW2d 23 (2005), that go beyond insurance contracts are mere dicta.  Specifically, I suspect that *Rory*'s statement that adhesion contracts "must be enforced according to [their] plain terms unless one of the traditional contract defenses applies" is properly considered a holding, not dictum.  *Id*. at 477.  Yet, even if that statement is a holding, I support creating a narrow carveout from *Rory*'s holding for adhesion contracts in the employment context. I consequently join the majority opinion in all other respects.

As the majority states, "Dictum is a judicial comment that is not necessary to the decision in the case."  *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014).  In *Detroit v Mich Pub Utilities Comm*, 288 Mich 267, 299-300; 286 NW 368 (1939), our Court defined a holding: " 'When a court of last resort intentionally takes up,

discusses and decides a question *germane* to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision.' " (Quoting *Chase v American Cartage Co, Inc*, 176 Wis 235, 238; 186 NW 598 (1922).) See also *In re Cox Estate*, 383 Mich 108, 117; 174 NW2d 558 (1970) (same); *People v Kevorkian*, 447 Mich 436, 487 n 65; 527 NW2d 714 (1994) (opinion by M. F. CAVANAGH, C.J., and BRICKLEY and GRIFFIN, JJ.) (same). To be sure, the appellant in *Rory* raised an issue involving auto insurance. Thus, the case involved an auto-insurance contract—more specifically, an insurance contract for uninsured motorist benefits. But insurance contracts are a textbook example of adhesion contracts.[1] Restatement Liability Insurance, § 2, reporters' note *d*, p 15 ("In the contracts literature, consumer and small-business insurance policies are the paradigmatic mass-market, standard-form contract of adhesion."). It follows that *Rory*'s statements regarding adhesion contracts are not dicta but rather were germane to the case and thus comprise a holding.[2]

---

[1] *Rory*, 473 Mich at 478. On that point, interestingly, while insurance contracts are adhesive, presumably in part because individuals are required to have insurance, Michiganders are not required to carry uninsured motorist benefits specifically. *Rory* itself noted that the uninsured motorist coverage was optional. *Id*. at 461. There was thus a potential argument that the contractual terms at issue in *Rory* were not adhesive, as the insured did have an option not to purchase the additional coverage. See *Morris v Metriyakool*, 418 Mich 423, 472; 344 NW2d 736 (1984) (opinion by RYAN, J.) (noting that "the essence of a contract of adhesion is a nonconsensual agreement forced upon a party against his will"). However, it seems that this argument was never made or considered, so I assume that the contract in *Rory* was an adhesion contract.

[2] I do note that *Rory*, in holding that adhesion contracts must be enforced by their plain terms, overruled *Herweyer v Clark Hwy Servs, Inc*, 455 Mich 14; 564 NW2d 857 (1997). Yet *Rory* performed no stare decisis analysis.

Following the majority's reasoning, should *Rory*'s holding have reached not insurance contracts or auto-insurance contracts, but even more narrowly, uninsured motorists insurance contracts? Perhaps. How narrow must a holding be to avoid being dicta? On the other side of the coin, I cannot believe that in order for a court to issue a proper holding regarding adhesion contracts, the court would have to do so in the context of a case or consolidated cases involving every possible type of adhesion contract. I do not wish to make a mountain out of a molehill, but I do worry about future courts construing a holding so narrowly that they are able to dispense with precedent by labeling it as dicta.[3]

Despite my minor disagreement with the majority opinion, I wholeheartedly agree with the majority's conclusion that *Rory* should not apply to adhesion contracts in the

---

[3] The majority contends that whether a conclusion is a holding depends on whether the question is " 'of general interest . . . and is fully discussed and submitted by counsel . . . .' " *Mich Pub Utilities Comm*, 288 Mich at 300, quoting *Alexander v Worthington*, 5 Md 471, 488-489 (1854). While that is an accurate partial quotation, I think it is best to examine the full quotation:

> In *Alexander v. Worthington*, 5 Md. 471, 488, it is said:
>
> "But where a question of general interest is supposed to be involved and is fully discussed and submitted by counsel, the court frequently decides the question with a view to settle the law, and it has never been supposed that a decision made under such circumstances could be deprived of its authority by showing that it was not called for by the record. * * * *All that is necessary in Maryland to render the decision of the court of appeals authoritative on any point decided is to show that there was an application of the judicial mind to the precise question adjudged; and this we apprehend is the rule elsewhere*." [*Mich Pub Utilities Comm*, 288 Mich at 300, quoting *Alexander*, 5 Md at 488-489 (emphasis added; asterisks in original).]

Particularly in light of the last sentence, I read the quote as interpreting the definition of "holding" quite broadly. That supports the notion that *Rory*'s rejection of careful scrutiny of adhesion contracts, generally, was an application of the judicial mind to the question adjudged.

employment context. I simply view the majority opinion as creating a narrow carveout from *Rory*'s holding on adhesion contracts for those in the employment context.[4]

Megan K. Cavanagh

---

[4] I am not necessarily convinced that a stare decisis analysis is required when the Court creates a carveout from a prior case's holding. See *People v Taylor*, ___ Mich ___, ___; ___ NW3d ___ (April 10, 2025) (Docket Nos. 166428 and 166654); slip op at 34-36 (creating a carveout by finding the holding of *People v Hall*, 396 Mich 650, 657-658; 242 NW2d 377 (1976), inapplicable to sentences of mandatory life in prison without the possibility of parole for 18-to-20-year-old defendants and not performing a stare decisis analysis).

However, if a stare decisis analysis were necessary, I believe that it weighs in favor of creating such a carveout. Having concluded, for the reasons set out in the majority opinion, that *Rory* was wrong insofar as it relates to adhesion contracts in the employment context, we turn to "whether the decision defies practical workability, whether reliance interests would work an undue hardship were the decision to be overruled, and whether changes in the law or facts no longer justify the decision." *City of Coldwater v Consumers Energy Co*, 500 Mich 158, 173; 895 NW2d 154 (2017). "A decision defies practical workability when it generates confusion among courts trying to apply it and sows division." *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 140; 1 NW3d 44 (2023). While a black-and-white rule sanctioning shortened limitations periods via adhesion contracts might be practically workable for employers, a rule that does not consider the reasonableness of prematurely cutting off employees' ability to redress wrongs is not what I would consider a workable rule. I also do not believe that there are reliance interests that would suffer undue hardship by overruling *Rory* in this limited capacity. While *Rory* has been on the books for 20 years, it has never been applied by this Court in the employment context, and *Rory* itself was a divided decision that did not engage in a stare decisis analysis before overruling more than a century of caselaw assessing shortened limitations periods for reasonableness. Further, employers can hardly have a legitimate reliance interest in enforcing unreasonable terms, such as potentially unreasonably short limitations periods like the one at issue here. Finally, there are no relevant changes in law or facts. With the first and second factors weighing in favor of limitedly overruling *Rory* for adhesion contracts in the employment context, the stare decisis test supports creating a carveout.

4

## STATE OF MICHIGAN

## SUPREME COURT

TIMIKA RAYFORD,

      Plaintiff-Appellant,

v                                   No. 163989

AMERICAN HOUSE ROSEVILLE I, LLC,
doing business as AMERICAN HOUSE
EAST I and AMERICAN HOUSE,

      Defendant-Appellee.

_____

ZAHRA, J. (*dissenting*).

This appeal asks the Court to consider the enforceability of a contractual agreement between an employee and her employer to shorten the limitations period for employment-related claims to 180 days. After being fired, the employee brought a complaint against her former employer, alleging several employment-related claims. But she did so well after the contractual limitations period expired. Based on the parties' contractual limitations provision and Michigan's longstanding enforcement of such provisions, the trial court granted summary disposition to the employer. The Court of Appeals affirmed on the same basis, disagreeing with the employee's argument that the limitations period was unenforceable because the employment contract was an unconscionable "contract of adhesion."

Now, a majority of this Court reverses. With little explanation and no legal justification, the majority opinion resurrects the "reasonableness" requirement for

contractual limitations periods, a requirement that we rejected two decades ago in *Rory v Continental Ins Co*.[1] This decision comes despite the fact that this legal issue was never raised by plaintiff in the lower courts or in plaintiff's application in this Court. The Court's majority accomplishes this sleight of hand by treating the "reasonableness" test for contractual limitations periods as being invoked by the conceptually unrelated ideas that so-called "adhesion contracts" should be given "close judicial scrutiny" and that the contract at issue was unconscionable. Like the "reasonableness" requirement for contractual limitations periods, the special-scrutiny approach to "adhesion contracts" was squarely rejected by the *Rory* Court 20 years ago. Yet here, too, the Court's majority revives the adhesion-contract theory without legal justification or explanation for its sharp departure from settled law. Blending the reasonableness and adhesive-contract ideas, the majority declares that limitations provisions in adhesive employment contracts will now be reviewed for "reasonableness." It remains unclear, however, what "close judicial scrutiny"—an undefined and vague standard now resurrected by the Court—might mean in other contexts. And rather than attempting to rebut *Rory*'s substance on any point, the majority opinion avoids our earlier decision by claiming that *Rory*'s holdings were dicta and that the general contract principles that formed the basis of *Rory* do not apply to employment contracts. There is no principled rationale to support such a distinction.

Apart from that, the majority opinion adds further confusion to what has been a clear, workable, and understandable area of Michigan contract jurisprudence by also addressing an issue that plaintiff actually did bring before the Court—whether the

---

[1] *Rory v Continental Ins Co*, 473 Mich 457; 703 NW2d 23 (2005).

2

contractual limitations period was unenforceable because of unconscionability. It is unclear how unconscionability could be relevant when plaintiff can prevail by showing that the terms of her employment contract were merely unreasonable. At any rate, the majority opinion offers a version of unconscionability that is different and broader than that doctrine has been understood in our law.

I agree with the *Rory* Court that traditional principles of contract law—not paternalistic exertions of judicial will and policymaking from the bench—must govern which contractual terms will be enforced in Michigan. On any proper view of our jurisprudence, *Rory* controls the result of this appeal. I reject the overreaching activism and the refusal to follow or even acknowledge precedent that forms the foundation of the majority opinion. For these reasons, I dissent.

## I. FACTS AND PROCEDURAL HISTORY

On February 14, 2017, defendant, American House Roseville I, LLC, which operates a nursing care facility, hired plaintiff, Timika Rayford, to work as a certified nursing assistant (CNA). About a week into her employment, plaintiff signed a document titled "Employee Handbook Acknowledgement" (the Acknowledgment). The relevant language of the Acknowledgment states as follows:

> In consideration of my employment, I agree that any claim or lawsuit arising out of my employment with the Company, or my application for employment with the Company, **must be filed no more than 180 days** after the date of [the] employment action that is the subject of the claim or lawsuit, unless the applicable statute of limitations period is shorter than 180 days in which case I will continue to be bound by that shorter limitations period. While I understand that the statute of limitations for claims arising out of an employment action may be longer than 180 days, I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY, unless state, federal or local law prohibits such waiver.

Plaintiff was soon promoted to a supervisory position. A few months later, she apparently learned of an inappropriate sexual relationship between one of her fellow CNAs and a member of defendant's upper management. According to plaintiff, the manager gave preferential treatment to that staff member, including better shifts and hours. Plaintiff reported this behavior to defendant's human resources department and to the state. According to plaintiff, she soon became the target of retaliation from the manager. Plaintiff alleged that the manager would ignore her concerns if she had problems with patients or other staff members. If another staff member was at fault for an error, the manager would discipline plaintiff. In short, plaintiff alleged that the manager acted unfairly toward her because she had reported his sexual relationship with the other CNA.

According to plaintiff, this animus from defendant's management ultimately resulted in her being fired. Plaintiff alleged that, on July 1, 2017, she left the facility after finishing her shift. Sometime later, she realized that she had left her purse behind in a locked room that was accessible only to supervisors and other managerial staff. The next day when she came to work, the purse was gone. Plaintiff reported it as stolen to both defendant and the police. Defendant accused plaintiff of lying about the stolen purse and allegedly showed the police a video that depicted plaintiff leaving work with her purse on the day in question. The next day, on July 3, 2017, a uniform law citation was issued, charging plaintiff with filing a false police report. Shortly thereafter, on July 7, 2017, defendant fired plaintiff. Plaintiff alleged that, in the end, the criminal citation was

4

dismissed after defendant failed to produce the alleged footage of plaintiff leaving work with her purse.[2]

In April 2020, almost three years after being fired, plaintiff sued defendant. She brought claims of harassment based on race and sex, retaliation, and hostile work environment in violation of the Elliott-Larsen Civil Rights Act (ELCRA);[3] wrongful discharge in violation of public policy; malicious prosecution; and abuse of process. In response, defendant moved for summary disposition under MCR 2.116(C)(7) and (C)(8). Defendant argued that all of plaintiff's claims arose out of her employment and that her claims were therefore time-barred by the Acknowledgment's 180-day limitations period. Plaintiff responded that the Acknowledgment was unenforceable for two reasons. First, it was an unconscionable contract of adhesion. And second, because defendant never provided plaintiff with a copy of the Acknowledgment as required by the Bullard-Plawecki Employee Right to Know Act (ERKA),[4] defendant should be estopped from relying on it.

The trial court agreed with defendant that plaintiff's claims were all contractually time-barred, explaining that the Acknowledgment "clearly and unambiguously required plaintiff to file suit within six months after the date of the employment action giving rise to suit." According to the trial court, plaintiff provided no authority that the Acknowledgment was unconscionable. Enforcing the parties' contractual limitations period, the trial court granted defendant summary disposition. The trial court also ruled

---

[2] According to plaintiff, the video provided by defendant was an incorrectly date-stamped video from a few days before the alleged theft.

[3] MCL 37.2101 *et seq*.

[4] MCL 423.501 *et seq*.

that the ERKA did not apply because plaintiff had never triggered the statute by requesting her personnel file. Finally, the trial court granted summary disposition on plaintiff's abuse-of-process claim, concluding that plaintiff had failed to plead that defendant abused the criminal process for an ulterior motive after the process had been initiated.

After the trial court denied her motion for reconsideration, plaintiff appealed. Her briefs in the Court of Appeals did not mention the "reasonableness" rule for contractual limitations periods that existed pre-*Rory*. Instead, plaintiff focused her arguments on the issues that she had raised in the trial court—the theory that her employment contract was an unconscionable contract of adhesion and the ERKA theory.[5] She invoked the pre-*Rory* case *Herweyer v Clark Hwy Servs, Inc*,[6] for the proposition that contracts of adhesion deserve "close judicial scrutiny" in the context of employment.[7] She mentioned the earlier case *Camelot Excavating Co, Inc v St Paul Fire & Marine Ins Co*[8]—from which the "reasonableness" standard for contractual limitations period stemmed—only through a single passing reference in a quotation of *Herweyer* that had nothing to do with the "reasonableness" approach. She did not reference the "reasonableness" inquiry during oral argument in the Court of Appeals.

---

[5] Plaintiff also argued that she should have been allowed to amend her complaint to provide additional facts supporting her abuse-of-process claim.

[6] *Herweyer v Clark Hwy Servs, Inc*, 455 Mich 14; 564 NW2d 857 (1997).

[7] *Id*. at 21.

[8] *Camelot Excavating Co, Inc v St Paul Fire & Marine Ins Co*, 410 Mich 118; 301 NW2d 275 (1981).

In an unpublished per curiam opinion, the Court of Appeals affirmed.[9] The Court of Appeals noted that Michigan courts have long recognized that contracting parties may agree to shorten a limitations period and that such agreements must be enforced as written unless a traditional contract defense like duress, waiver, estoppel, fraud, or unconscionability applies.[10] These principles, the Court of Appeals observed, apply to employment contracts.[11] The Court of Appeals then described plaintiff's arguments and how they related to governing law:

> At the outset, plaintiff questions this well-established law by suggesting that contracts of adhesion (a take-it-or-leave-it agreement), like the Acknowledgment, deserve "close judicial scrutiny" and may be voided by a judicial assessment of "reasonableness" under *Herweyer* . . . . Plaintiff recognizes that the Michigan Supreme Court overruled *Herweyer* in *Rory*, but posits that an "open question" exists whether *Herweyer*'s "close judicial scrutiny" or reasonableness standard applies in the context of employment contracts because *Rory* did not involve an employment contract. Plaintiff does not adequately explain how, were her understanding of the jurisprudence correct, application of *Herweyer*'s "close judicial scrutiny" rubric would change the outcome in this case or, otherwise, benefit her. Notwithstanding plaintiff's failure in this regard, *Rory* made it clear that "an adhesion contract is simply a type of contract and is to be enforced according to its plain terms just as any other contract" consonant with traditional contract principles that have been historically followed in Michigan. *Rory*, 473 Mich at 488 (emphasis omitted). Moreover, given that *Rory* viewed *Herweyer* as an aberration that strayed from traditional contract rules in favor of judicial whims of reasonableness, we cannot conclude that *Rory* left open

---

[9] *Rayford v American House Roseville I, LLC*, unpublished per curiam opinion of the Court of Appeals, issued December 16, 2021 (Docket No. 355232), p 1.

[10] *Id*. at 3, citing *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 30; 772 NW2d 801 (2009).

[11] *Rayford*, unpub op at 3, citing *Clark v DaimlerChrysler Corp*, 268 Mich App 138, 142; 706 NW2d 471 (2005).

a question whether such traditional rules would apply in the context of an employment agreement.[12]

Applying these principles to the Acknowledgment, the Court of Appeals held that plaintiff and defendant had validly agreed to a 180-day limitations period for all claims arising out of plaintiff's employment.[13] The Court of Appeals also concluded that plaintiff's abuse-of-process claim was subject to the contractual limitations period.[14] The Court of Appeals then rejected plaintiff's contentions that the Acknowledgment was unenforceable because it was unconscionable and that defendant was estopped from relying on the Acknowledgment because of an ERKA violation.[15] Discerning no error in the trial court's grant of summary disposition, the Court of Appeals affirmed.[16]

Notably, the Court of Appeals opinion contains the first reference in the record to a "reasonableness" standard for reviewing the contractual limitations period. Apparently trying to give a generous reading of plaintiff's argument concerning *Herweyer*, the Court of Appeals mentioned and rejected both the "close judicial scrutiny" and "reasonableness" theories. Contrary to the Court of Appeals' phrasing, however, plaintiff never "suggest[ed] that contracts of adhesion . . . may be voided by a judicial assessment of 'reasonableness'

---

[12] *Rayford*, unpub op at 3 (citation omitted).

[13] *Id*. at 4.

[14] *Id*. The Court of Appeals also rejected plaintiff's argument that she should have been allowed to amend her complaint regarding the abuse-of-process claim because the contractual limitations period would apply anyway and because plaintiff identified no specific facts that would have been sufficient to support the claim. *Id*. at 7 n 4.

[15] *Id*. at 4-7.

[16] *Id*. at 7.

under *Herweyer* . . . ."[17]  Nor did plaintiff argue that contractual limitations periods should be judicially assessed for "reasonableness."

Plaintiff sought leave to appeal in this Court, raising the same arguments she had brought in the Court of Appeals.  Again, plaintiff never argued that the contractual limitations period should be assessed for reasonableness; plaintiff cited the pre-*Rory* cases *Herweyer* and *Camelot* only to support her adhesion-contract and unconscionability arguments.  Similarly, plaintiff did not argue that the Acknowledgment's 180-day limitations period violated public policy.

After holding plaintiff's application in abeyance for another pending appeal,[18] the Court eventually ordered oral argument on the application alongside two other cases that also involved challenges to the enforceability of employment-contract terms.[19]  Although plaintiff had never argued that the Acknowledgment was unenforceable because it violated public policy, the Court ordered the parties to file supplemental briefs addressing "whether *Timko v Oakwood Custom Coating, Inc*, 244 Mich App 234[; 625 NW2d 101] (2001), correctly held that contractual limitations clauses which restrict civil rights claims do not violate public policy."[20]

---

[17] *Id*. at 3.  Further, as will be explained later in this opinion, *Herweyer* does not stand for the proposition that a contractual limitations period may be voided by a judicial assessment of reasonableness.  See Part III(A)(1)(c) of this opinion.

[18] *Rayford v American House Roseville I, LLC*, 973 NW2d 139 (2022).

[19] *Rayford v American House Roseville I, LLC*, 511 Mich 1010, 1010 (2023).  See *Saidizand v GoJet Airlines, LLC*, 511 Mich 1009 (2023); *Adilovic v Monroe, LLC*, 987 NW2d 869 (2023).

[20] *Rayford*, 511 Mich at 1010.

We heard oral argument on that issue on November 8, 2023. On May 23, 2024, the Court issued an order granting leave to appeal.[21] The grant order abandoned the issue from the first oral argument and asked two new questions, directing the parties to address:

(1) whether *Clark v DaimlerChrysler Corp*, 268 Mich App 138 (2005), properly extended this Court's holding in *Rory v Continental Ins Co*, 473 Mich 457 (2005), to employment contracts (see also *Camelot Excavating Co, Inc v St Paul Fire & Marine Ins Co*, 410 Mich 118 (1981), overruled by *Rory*, 473 Mich 457, and *Herweyer v Clark Hwy Servs, Inc*, 455 Mich 14 (1997), overruled by *Rory*, 473 Mich 457); and (2) if not, whether the contract at issue in this case is an unconscionable contract of adhesion.[22]

We heard oral argument on those issues on April 9, 2025.

## II. STANDARD OF REVIEW

The proper interpretation of a contract and the legal effect of a contractual provision are questions of law that are reviewed de novo.[23] This Court also applies the de novo standard when reviewing the grant or denial of a motion for summary disposition.[24] Where, as here, a motion for summary disposition is brought under MCR 2.116(C)(7), the motion or opposition may be supported by documentary evidence as long as the substance or content of that evidence is admissible.[25] "The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant."[26] If no facts are in

---

[21] *Rayford v American House Roseville I, LLC*, 513 Mich 1096, 1096 (2024).

[22] *Id*.

[23] *Rory*, 473 Mich at 464.

[24] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

[25] *Id*. at 119.

[26] *Id*., citing *Patterson v Kleiman*, 447 Mich 429, 434 n 6; 526 NW2d 879 (1994).

10

dispute and reasonable minds could not differ on the legal effect of the facts, then the resolution of a motion for summary disposition under MCR 2.116(C)(7) is a question of law for the trial court[27] that is reviewed de novo on appeal.[28]

### III. DISCUSSION

As the *Rory* Court explained, an unambiguous contractual provision must be enforced as written unless the provision would violate law or public policy.[29] This is an unremarkable statement of law. Yet in the years preceding *Rory*, unsupported statements by this Court fostered confusion about whether substantive contractual terms not in violation of law or public policy as traditionally understood would be enforced. *Rory* brought doctrinal clarity and coherence that the majority opinion now jettisons.

### A. LEGAL BACKGROUND

Like the majority opinion, I find it helpful to review the cases that have led us to today. Unlike the majority opinion, I conclude that a complete review of the applicable caselaw demonstrates the flimsy nature of the pre-*Rory* cases on which the majority now relies.

#### 1. PRE-*RORY* CASES

##### a. *TOM THOMAS ORG, INC v RELIANCE INS CO*

In 1976, this Court for the first time alluded to reasonableness as a metric for deciding whether a contractual limitations period would be enforced. In *Tom Thomas Org,*

---

[27] *Dextrom v Wexford Co*, 287 Mich App 406, 431; 789 NW2d 211 (2010).

[28] *Maiden*, 461 Mich at 118.

[29] *Rory*, 473 Mich at 469-470.

*Inc v Reliance Ins Co*,[30] the Court considered the enforceability of a one-year contractual limitations period in an insurance policy.[31] The Court stated that the "general rule, absent statute, is that a provision in a policy of insurance limiting the time for bringing suit is valid if reasonable even though the period is less than that prescribed by otherwise applicable statutes of limitation."[32] The Court cited a secondary source, not a Michigan authority, for this proposition.[33] In a subsequent footnote, the Court observed that there was a long history in Michigan of enforcing contractual limitations periods without discussing reasonableness.[34] Ultimately, the *Tom Thomas* Court did not resolve the case based on an assessment of reasonableness.[35] Instead, it tolled the running of the limitations period for the time that elapsed between the plaintiff's notice to the insurer and the insurer's denial of the claim.[36]

b. *CAMELOT EXCAVATING CO, INC v ST PAUL FIRE & MARINE INS CO*

In *Camelot*, decided in 1981, the Court for the first time used reasonableness as a benchmark to determine the enforceability of a contractual limitations period. *Camelot* involved a one-year limitations provision in a contract for a bond ensuring payment for

---

[30] *Tom Thomas Org, Inc v Reliance Ins Co*, 396 Mich 588, 591-592; 242 NW2d 396 (1976).

[31] *Id*.

[32] *Id*. at 592.

[33] *Id*.

[34] *Id*. at 592 n 4 (citing five cases decided between 1907 and 1963).

[35] *Id*. at 597.

[36] *Id*. at 593-594, 596-597.

labor and materials in a construction project.[37]  After the general contractor abandoned the construction project, the plaintiff subcontractor eventually sued the defendant surety, seeking payment for completed work.[38]  The defendant relied on the contractual limitations period, which had expired before the plaintiff filed its complaint.[39]  The trial court deemed the contractual limitations provision to be ambiguous and refused to enforce it, but the Court of Appeals reversed.[40]

The *Camelot* Court began its analysis by citing *Tom Thomas* for the proposition that "the general rule followed by most courts has been to uphold provisions in private contracts limiting the time to bring suit where the limitation is reasonable, even though the period specified is less than the applicable statute of limitations."[41]  Other jurisdictions had applied this rule to construction-bond contracts.[42]  Relying on cases from other states, the Court explained the requirements for what is "reasonable": "that the claimant have sufficient opportunity to investigate and file an action, that the time not be so short as to work a practical abrogation of the right of action, and that the action not be barred before the loss

---

[37] *Camelot*, 410 Mich at 124.

[38] *Id*. at 125-126.

[39] *Id*. at 126.

[40] *Id*.

[41] *Id*., citing *Tom Thomas*, 396 Mich at 592.  The Court also included "see also" citations to *Barza v Metro Life Ins Co*, 281 Mich 532, 538; 275 NW 238 (1937), and *Turner v Fidelity & Cas Co of NY*, 112 Mich 425, 427; 70 NW 898 (1897).  Neither *Barza* nor *Turner* involved a question of whether the enforceability of a contractual limitations period could be based on reasonableness.

[42] *Camelot*, 410 Mich at 126-127.

or damage can be ascertained."[43]  From there, the *Camelot* Court concluded that the plaintiff was bound by the terms of the bond contract even though the plaintiff was a third-party beneficiary and not a party to the contract.[44]  Relying on cases from other states that upheld one-year limitations periods in similar contracts, the Court held, without elaboration, that the limitations "period provided was reasonable."[45]  The Court rejected the plaintiff's arguments that the limitations period violated public policy and that the contractual language was ambiguous.[46]  Consequently, the *Camelot* Court upheld the contractual limitations period and affirmed the Court of Appeals' judgment.[47]

Justice LEVIN joined the opinion of the Court in *Camelot* but wrote a separate concurrence stating his belief that the rationale for enforcing contractually shortened limitations periods depended on the shortened periods being bargained-for terms.[48]  According to Justice LEVIN, in "the case of an adhesion contract, however, where the party ostensibly agreeing to the shortened period has no real alternative, this rationale is inapplicable."[49]  In his view, this was because, without the "bargained-for element," "one

---

[43] *Id*. at 127, citing *Page Co v Fidelity & Deposit Co of Md*, 205 Iowa 798; 216 NW 957 (1927); *Cook v Northern Pacific R Co*, 32 ND 340; 155 NW 867 (1915); *Sheard v US Fidelity & Guaranty Co*, 58 Wash 29; 107 P 1024 (1910), reh den 58 Wash 37 (1910).

[44] *Camelot*, 410 Mich at 128-133.

[45] *Id*. at 129-134, 136.

[46] *Id*. at 133-140.

[47] *Id*. at 140.

[48] *Id*. at 141 (LEVIN, J., concurring).

[49] *Id*.

14

of the contracting parties has supplanted the period of limitation mandated by the Legislature" and therefore subjected the public policy of the statute of limitations to "unilateral preemption."[50] Although the Court had upheld the limitations period in the construction-bond contract, Justice LEVIN opined, in a matter involving an "adhesion contract—such as most contracts of insurance—in which the shortened period has not actually been bargained for, or which operates to defeat the claim of an intended beneficiary not involved in the bargaining process," it would be "a different case."[51]

### c. *HERWEYER v CLARK HWY SERVS, INC*

In 1997, this Court in *Herweyer* considered an employment contract that included a six-month limitations period.[52] The contract also contained a savings clause—if any part of the contract were found to be unenforceable, it would be enforced " 'as far as legally possible.' "[53] After being terminated from his seasonal job, the *Herweyer* plaintiff brought various claims against his former employer.[54] But he did so 31 months after his termination.[55] The trial court and the Court of Appeals both concluded that, regardless of

---

[50] *Id.*

[51] *Id.* at 142-143.

[52] *Herweyer*, 455 Mich at 16.

[53] *Id.*

[54] *Id.* at 17.

[55] *Id.* at 17-18.

whether six months was a reasonable limitations period, the minimum reasonable period had passed, so the action was time-barred through the contract's savings clause.[56]

The *Herweyer* Court began its analysis with a summary of *Camelot*'s facts and holding.[57] It then quoted Justice LEVIN's *Camelot* concurrence, specifically the language about *Camelot*'s rationale being " 'inapplicable' " in " 'the case of an adhesion contract . . . .' "[58] Without further explanation or citation of authority, the Court announced:

> We share Justice LEVIN's concerns. Employment contracts differ from bond contracts. An employer and employee often do not deal at arm's length when negotiating contract terms. An employee in the position of plaintiff has only two options: (1) sign the employment contract as drafted by the employer or (2) lose the job. Therefore, unlike in *Camelot* where two businesses negotiated the contract's terms essentially on equal footing, here plaintiff had little or no negotiating leverage. Where one party has less bargaining power than another, the contract agreed upon might be, but is not necessarily, one of adhesion, and at the least deserves close judicial scrutiny.[59]

The rest of the Court's analysis did not allude to these considerations or explain how they affected the case.[60] Nor did the Court describe what "close judicial scrutiny" entailed.[61] Instead, after holding that the "vague and ambiguous" savings clause was too

---

[56] *Id*.

[57] *Id*. at 19-20.

[58] *Id*. at 20-21, quoting *Camelot*, 410 Mich at 141 (LEVIN, J., concurring).

[59] *Herweyer*, 455 Mich at 21.

[60] See *id*. at 21-24.

[61] See *id*.

16

uncertain and indefinite in its application to create an enforceable limitations period, the Court concluded that the plaintiff's claims were not time-barred by the contract.[62] Unless the contractual period was "specific and reasonable," the Court instructed, courts "should defer to the statutory period" as a matter of policy.[63] The *Herweyer* Court declined to address whether the six-month limitations period in the contract was reasonable because the lower courts had resolved the case using the savings clause and because the question was outside the scope of the grant order.[64]

### d.  *TIMKO v OAKWOOD CUSTOM COATING, INC*

The final significant pre-*Rory* decision in this line of cases is *Timko v Oakwood Custom Coating, Inc*, issued by the Court of Appeals in 2001.[65] There, in a dispute arising out of the plaintiff's employment with the defendant, the plaintiff challenged the enforceability of a 180-day limitations period in his employment contract.[66] The trial court held the contractual limitations period to be reasonable and enforced it.[67] Although the plaintiff argued that *Herweyer* had held that a 180-day limitations period was unreasonable

---

[62] *Id*. at 21, 24.

[63] *Id*. at 24.

[64] *Id*. at 18-19 ("[W]e express no opinion regarding the reasonableness of any shortened period agreed to by the parties.").

[65] *Timko v Oakwood Custom Coating, Inc*, 244 Mich App 234; 625 NW2d 101 (2001), lv den 464 Mich 875 (2001).

[66] *Id*. at 236-237.

[67] *Id*. at 237.

in an employment contract, the Court of Appeals majority pointed out that *Herweyer* had declined to address reasonableness.[68]

The *Timko* majority therefore conducted its own reasonableness assessment under *Camelot* and concluded that the 180-day contractual limitations period was reasonable.[69] In reaching this conclusion, the panel majority relied largely on a federal decision, *Myers v Western-Southern Life Ins Co*.[70] In *Myers*, the United States Court of Appeals for the Sixth Circuit applied Michigan law and the *Camelot* standard to uphold as reasonable a six-month contractual limitations period in an employment-discrimination case.[71] Similarly, in *Timko*, because there was " 'nothing inherently unreasonable about a six-month limitations period' " and the plaintiff had not shown that the limitations provision had deprived him of the opportunity to file his claims, the Court of Appeals majority upheld the limitations provision as reasonable.[72]

The dissenting judge in *Timko* argued that, even though the *Herweyer* Court expressed no opinion on the reasonableness of the six-month limitations period in that case,

---

[68] *Id*. at 238-240.

[69] *Id*. at 239-244.

[70] See *id*. at 240-244, citing *Myers v Western-Southern Life Ins Co*, 849 F2d 259 (CA 6, 1988).

[71] *Timko*, 244 Mich App at 240-244, citing *Myers*, 849 F2d at 260, 262.

[72] *Timko*, 244 Mich App at 241, 243-244, quoting *Myers*, 849 F2d at 262. The *Timko* majority also rejected the plaintiff's contention that his employment contract was unenforceable as a contract of adhesion. *Timko*, 244 Mich App at 244-245. This was because the Court of Appeals had already deemed the limitations period reasonable, and a court " 'will not invalidate contracts as adhesion contracts where the challenged provision is reasonable.' " *Id*. at 245, quoting *Rembert v Ryan's Family Steak Houses, Inc*, 235 Mich App 118, 157; 596 NW2d 208 (1999).

the result of *Herweyer* implied that the six-month period was not reasonable.[73] This, along with the *Timko* plaintiff's relative lack of bargaining power, cemented the dissenting judge's view that the shortened limitations period was not reasonable.[74]

e. SUMMARY

The upshot of the caselaw spanning between *Camelot* and *Rory* was that contractually shortened limitations periods were generally enforceable but upheld only if deemed substantively "reasonable" by the reviewing court. The "reasonableness" idea first entered our caselaw in 1976 with *Tom Thomas* but was not applied by the Court until *Camelot* in 1981. This marked a departure from our past practice of enforcing contractual limitations provisions without reference to reasonableness.[75] *Camelot* adopted a framework for reasonableness that looked to whether a contractual limitations period effectively eliminated a right of action.[76] In *Herweyer*, the Court endorsed the idea that adhesion contracts should be given "close judicial scrutiny"[77] but did not explain how it reached that conclusion or what it meant; the Court seemingly resolved the case on other grounds.[78] In *Timko*, a split Court of Appeals panel concluded that a 180-day limitations

---

[73] *Timko*, 244 Mich App at 247 (MCDONALD, P.J., dissenting).

[74] *Id*. at 247-248.

[75] See *Tom Thomas*, 396 Mich at 592 n 4.

[76] See *Camelot*, 410 Mich at 127 (opinion of the Court).

[77] *Herweyer*, 455 Mich at 20-21.

[78] See *id*. at 21-24.

19

period in an employment contract is generally reasonable.[79]  Lost in the mix, however, was the unspoken assumption on which these cases all relied: that courts had the authority to modify unambiguous contractual terms on the basis of subjective judicial views of substantive reasonableness or fairness.

## 2.  *RORY* AND SUBSEQUENT CASELAW

### a.  *RORY v CONTINENTAL INS CO*

This Court decided *Rory* in 2005.  The *Rory* plaintiffs had an automobile insurance policy from the defendant insurer.[80]  The policy included uninsured motorist (UIM) coverage and contained a one-year contractual limitations period.[81]  The plaintiffs were injured in a car collision with an uninsured motorist, but they filed their UIM claim more than a year later, leading to a denial based on the limitations provision.[82]  The plaintiffs sued the defendant, and the defendant moved for summary disposition, again based on the limitations clause.[83]

The trial court denied the defendant's motion, ruling that the policy's one-year limitations provision was unreasonable.[84]  After the Court of Appeals issued an unpublished opinion in an unrelated case holding that an identical one-year limitations

---

[79] *Timko*, 244 Mich App at 243-244 (opinion of the Court).

[80] *Rory*, 473 Mich at 461.

[81] *Id*. at 460-461.

[82] *Id*. at 461-462.

[83] *Id*. at 462.

[84] *Id*.

provision was reasonable and enforceable,[85] the defendant renewed its summary disposition motion.[86] Again, the trial court denied the motion.[87] This time, the trial court held that the one-year limitations clause was an unenforceable adhesion provision because it was not highlighted for the plaintiffs, was not bargained over, and was substantively one-sided.[88] These aspects made it " 'totally and patently unfair,' " in the trial court's view, to enforce the limitations clause.[89] The Court of Appeals affirmed the trial court.[90] It summarized *Timko* and *Herweyer*, quoting *Herweyer*'s paragraph discussing adhesion contracts before concluding that "the one-year contractual limitations period is not reasonable under *Timko* and *Herweyer*."[91] Further, the Court of Appeals noted that "the policy should receive close judicial scrutiny" under *Herweyer* because the "insured had the option of accepting [UIM] coverage or rejecting it, but could not have bargained for a longer limitations period."[92] This Court granted leave to appeal.[93]

---

[85] *Williams v Continental Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued April 23, 2002 (Docket No. 229183).

[86] *Rory*, 473 Mich at 462.

[87] *Id*.

[88] *Id*.

[89] *Id*. at 463.

[90] *Rory v Continental Ins Co*, 262 Mich App 679, 680; 687 NW2d 304 (2004), rev'd 473 Mich 457 (2005).

[91] *Id*. at 683-685.

[92] *Id*. at 687.

[93] *Rory v Continental Ins Co*, 471 Mich 904, 904 (2004).

21

This Court began its analysis in *Rory* by reviewing the "reasonableness" doctrine in Michigan. *Tom Thomas* first articulated the " 'general rule' that a shortened contractual period of limitations was 'valid *if reasonable*,' "[94] although it relied on a secondary source and not on any Michigan law to do so.[95] Then, in *Camelot*, the Court expanded on the *Tom Thomas* dicta and upheld a limitations period because it was "reasonable."[96] But neither of these cases' statements about "reasonableness" had any support in Michigan jurisprudence, as *Camelot*'s sole Michigan source for the idea was *Tom Thomas*, and *Tom Thomas* relied on no Michigan authorities.[97]

The *Rory* Court concluded that, by using a " 'reasonableness' test" and "failing to employ the plain language of the contract," *Camelot* violated basic principles of Michigan contract law.[98] "A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*."[99] Rather than imposing their own views of the terms the parties should have agreed on,

---

[94] *Rory*, 473 Mich at 466, quoting *Tom Thomas*, 396 Mich at 592 (emphasis by the *Rory* Court).

[95] *Rory*, 473 Mich at 466 n 15.

[96] *Id*. at 467-468.

[97] *Id*. at 466-467, 467 n 17.

[98] *Id*. at 468.

[99] *Id*., citing *Harrington v Inter-State Business Men's Accident Ass'n*, 210 Mich 327; 178 NW 19 (1920); *Indemnity Ins Co of North America v Geist*, 270 Mich 510; 259 NW 143 (1935); *Cottrill v Mich Hosp Serv*, 359 Mich 472; 102 NW2d 179 (1960); *Henderson v State Farm Fire & Cas Co*, 460 Mich 348; 596 NW2d 190 (1999); *Cruz v State Farm Mut Auto Ins Co*, 466 Mich 588; 648 NW2d 591 (2002).

[c]ourts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract. This Court has previously noted that "[t]he general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts."[100]

The *Rory* Court continued:

> When a court abrogates unambiguous contractual provisions based on its own independent assessment of "reasonableness," the court undermines the parties' freedom of contract. As this Court previously observed:
>
>> This approach, where judges . . . rewrite the contract[,] . . . is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance such as a contract in violation of law or public policy. . . . The notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable. It draws strength from common-law roots and can be seen in our fundamental charter, the United States Constitution, where government is forbidden from impairing the contracts of citizens, art I, § 10, cl 1. Our own state constitutions over the years of statehood have similarly echoed this limitation on government power. It is, in short, an unmistakable and ineradicable part of the legal fabric of our society.[101]

In short, based on longstanding Michigan law of which *Camelot* took no stock, a judicial assessment of "reasonableness" is not a valid basis for refusing to enforce a contract.[102] From this, the *Rory* Court held that, unless the provision would violate law or

---

[100] *Rory*, 473 Mich at 468-469, quoting *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602 (2002) (quotation marks and citation omitted).

[101] *Rory*, 473 Mich at 468-469, quoting *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51-52; 664 NW2d 776 (2003) (first two ellipses by the *Rory* Court).

[102] *Rory*, 473 Mich at 470.

public policy, or a traditional contract defense applied, an unambiguous contract provision must be enforced as written.[103] The *Rory* Court ended this part of its analysis by holding that "[t]o the degree that *Tom Thomas*, *Camelot*, and their progeny abrogate unambiguous contractual terms on the basis of reasonableness determinations, they are overruled."[104]

After overruling the "reasonableness" standard as contrary to Michigan contract law, the *Rory* Court concluded that the challenged limitations provision was not contrary to law or public policy.[105] Neither enacted law nor policy " 'clearly rooted in the law' " prohibited the limitations clause at issue.[106] Further, although insurance policies were subject to special regulation and approval by the Commissioner of Insurance, the Commissioner had approved the defendant's insurance policy form.[107] And the plaintiffs did not challenge that decision.[108]

Finally, the *Rory* Court turned to the question of whether the contractual limitations period was unenforceable because the insurance policy was an "adhesion contract."[109] In making their rulings, the *Rory* trial court and Court of Appeals panel had both relied on the

---

[103] *Id*. "Examples of traditional defenses include duress, waiver, estoppel, fraud, or unconscionability." *Id*. at 470 n 23.

[104] *Id*. at 470.

[105] *Id*. at 470-476. See *Terrien*, 467 Mich at 66-68 (discussing how to determine Michigan public policy in the context of contract enforcement).

[106] *Rory*, 473 Mich at 471-472, quoting *Terrien*, 467 Mich at 67.

[107] *Rory*, 473 Mich at 474-475, citing MCL 500.2236(1), (5), and (6).

[108] *Rory*, 473 Mich at 476.

[109] *Id*. at 476-477.

assumptions that adhesion contracts should be given closer scrutiny than other kinds of contracts and that a court need not enforce an adhesion contract if the court viewed the terms as unfair.[110]  According to the *Rory* Court, however, this approach was "inconsistent with traditional contract principles."[111]  "An 'adhesion contract' is simply that: a *contract*."[112]  Indeed, the *Rory* Court explained, the "adhesion contract doctrine" existed only as dicta in Michigan until *Herweyer* implicitly adopted it.[113]  And *Herweyer* adopted this view of adhesion contracts as meriting special treatment "without reference to and in contravention of more than one hundred years of contrary case law from this Court."[114]

The *Rory* Court began its analysis with the history of the adhesion-contract concept. The term "adhesion contract" was traced to a 1919 law review article that described life-insurance policies as "contracts of 'adhesion' " because insureds had no say in the policies' terms but "merely 'adhere[d]' " to them.[115]  Notably, this "adhesion" language was merely descriptive and did not suggest that such a contract might be unenforceable.[116]  Not until decades later, in a 1943 law review article, did the normative suggestion emerge in

---

[110] *Id*., citing *Rory*, 262 Mich App at 687.

[111] *Rory*, 473 Mich at 477.

[112] *Id*.

[113] *Id*. at 477-478.

[114] *Id*. at 478.

[115] *Id*., quoting Patterson, *The Delivery of a Life-Insurance Policy*, 33 Harv L Rev 198, 222 (1919) (quotation marks omitted).

[116] *Rory*, 473 Mich at 478.

American academia that courts should not enforce terms of "adhesion contracts" that may be deemed unfair by judicial declaration.[117]

Rory then reviewed this Court's cases that invoked the idea of adhesion contracts. The Court's first reference to an "adhesion contract" is found in *Zurich Ins Co v Rombough*,[118] a case from 1970.[119] The *Rombough* Court did not adopt or apply any kind of "adhesion contract" concept, although it quoted at length a California case, *Gray v Zurich Ins Co*,[120] that discussed the concept.[121] The Court ultimately resolved *Rombough* on alternative grounds by applying the rule of *contra proferentem* (also stated in the *Gray* quotation) that ambiguous contract language should be construed against the drafter.[122] Thus, *Rombough*'s quotation of *Gray*'s "adhesion contract" language was not part of its holding.[123] One year later, in *Cree Coaches, Inc v Panel Suppliers, Inc*,[124] the Court upheld a contractual limitations provision while remarking in passing that the contract was not " 'a

---

[117] *Id.* at 478-479, citing Kessler, *Contracts of Adhesion—Some Thoughts about Freedom of Contract*, 43 Colum L Rev 629, 634, 637, 640-642 (1943).

[118] *Zurich Ins Co v Rombough*, 384 Mich 228; 180 NW2d 775 (1970).

[119] *Rory*, 473 Mich at 480.

[120] *Gray v Zurich Ins Co*, 65 Cal 2d 263; 419 P2d 168 (1966).

[121] *Rory*, 473 Mich at 480-482.  See *Rombough*, 384 Mich at 232-233, quoting *Gray*, 65 Cal 2d at 269-270.

[122] *Rory*, 473 Mich at 480-482.  See *Rombough*, 384 Mich at 234.

[123] *Rory*, 473 Mich at 481-482.  See *Wilkie*, 469 Mich at 55-56 ("Whatever the effect on California law *Gray* created, we must assume that our Court's use of the quotation was only to fully outline [California Supreme Court] Justice Tobriner's position, because *Rombough* was decided on the basis of construing against the drafter . . . .").

[124] *Cree Coaches, Inc v Panel Suppliers, Inc*, 384 Mich 646; 186 NW2d 335 (1971).

contract of adhesion from which public policy would grant relief.' "[125]  The *Rory* Court

deemed this *Cree Coaches* "digression . . . cryptic at best, because this Court had never

before declined to enforce an 'adhesion contract.' "[126]  And, of course, in 1981, there was

Justice LEVIN's *Camelot* concurrence.  But the basis for his assertions about an " 'adhesion

contract . . . present[ing] a different case' " was "unclear" to the *Rory* Court "because

characterization of an agreement as an adhesive contract had never before been pivotal in

the Court's analysis or enforcement of a contract."[127]

In the 1982 case *Raska v Farm Bureau Mut Ins Co of Mich*,[128] the Court pushed

away from the adhesion-contract notion.  The *Raska* Court stated that "[a]ny clause in an

insurance policy is valid as long as it is clear, unambiguous and not in contravention of

public policy."[129]  This meant that insurance contracts—sometimes seen as inherent

contracts of adhesion[130]—should be enforced according to their terms like any other

contract.[131]  Two years later, in *Morris v Metriyakool*,[132] two separate two-justice opinions

(one for the Court and one concurring) proposed two different views of what constituted

---

[125] *Rory*, 473 Mich at 482, quoting *Cree Coaches*, 384 Mich at 649.

[126] *Rory*, 473 Mich at 482.

[127] *Id*. at 482-483, quoting *Camelot*, 410 Mich at 142-143 (LEVIN, J., concurring).

[128] *Raska v Farm Bureau Mut Ins Co of Mich*, 412 Mich 355; 314 NW2d 440 (1982).

[129] *Id*. at 361-362.

[130] See *id*. at 364 (WILLIAMS, J., dissenting) (equating an insurance contract with a contract of adhesion).

[131] *Rory*, 473 Mich at 483.

[132] *Morris v Metriyakool*, 418 Mich 423; 344 NW2d 736 (1984).

an adhesion contract, even though the Court had never adopted the doctrine and both opinions agreed that the contract in *Morris* was not one of adhesion.[133] In the 1986 case *Powers v Detroit Auto Inter-Ins Exch*,[134] the two-justice lead opinion asserted that all insurance contracts are adhesion contracts.[135] The Court again alluded to adhesive insurance contracts being construed in favor of the insured in a 1989 case, *Auto Club Ins Ass'n v DeLaGarza*,[136] but the Court resolved the case on the basis of ambiguity in the policy.[137]

Finally, the *Rory* Court turned to *Herweyer*, in which the Court at least arguably declined to enforce a contractual term in part because the contract was one of adhesion.[138] *Rory* emphasized the lack of authority for *Herweyer*: "Solely on the basis of Justice LEVIN's concurring opinion in *Camelot*, the *Herweyer* Court indicated—for the first time in this Court's history—that a so-called 'adhesion contract' was unenforceable simply because of the disparity in the contracting parties' 'bargaining power.' "[139] Indeed, the "*Herweyer* Court did not cite a single majority opinion of this Court to support its

---

[133] *Rory*, 473 Mich at 483-485. See *Morris*, 418 Mich at 440 (opinion by KAVANAGH, J.); *id*. at 471-472 (opinion by RYAN, J.).

[134] *Powers v Detroit Auto Inter-Ins Exch*, 427 Mich 602; 398 NW2d 411 (1986).

[135] *Rory*, 473 Mich at 485-486, citing *Powers*, 427 Mich at 608 (opinion by WILLIAMS, C.J.).

[136] *Auto Club Ins Ass'n v DeLaGarza*, 433 Mich 208, 215 n 7, 218; 444 NW2d 803 (1989).

[137] *Rory*, 473 Mich at 486, citing *Auto Club Ins Ass'n*, 433 Mich at 215 n 7, 218.

[138] *Rory*, 473 Mich at 486-487.

[139] *Id*. at 487.

conclusion."[140]  *Herweyer* represented "a confused jumble of ignored precedent, silently acquiesced to plurality opinions, and dicta, all of which, with little scrutiny, have been piled on each other to establish authority."[141]  The *Rory* Court rejected *Herweyer*'s approach in favor of "a century of case law to the contrary":[142]

> Today we are faced with a choice.  We may follow *Herweyer* and its summary conclusion that "[w]here one party has less bargaining power than another, the contract agreed upon might be, but is not necessarily, one of adhesion, and at the least deserves close judicial scrutiny."  Or we may, consistently with the many cases that *Herweyer* presumptively displaced without overruling them, hold that an adhesion contract is simply a type of contract *and* is to be enforced according to its plain terms just as any other contract.  We choose the latter course because it is most consonant with traditional contract principles our state has historically honored.[143]

Accordingly, the *Rory* Court held that "it is of no legal relevance that a contract is or is not described as 'adhesive' " because in "either case, the contract is to be enforced according to its plain language."[144]  The Court thus reversed the Court of Appeals' judgment.[145]

---

[140] *Id.*

[141] *Id.* at 488 (quotation marks and citation omitted).

[142] *Id.*

[143] *Id.* at 488-489 (citation omitted).

[144] *Id.* at 489.

[145] *Id.* at 491.

Justice MARILYN KELLY authored the lead dissent in *Rory*.[146] She cited this Court's 1865 decision in *Price v Hopkin*[147] to support her conclusion that there should be a "reasonableness" requirement for the enforcement of contractual limitations periods.[148] In *Price*, this Court stated that the Legislature's " 'authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal remedy, all remedy whatsoever may be taken away' " and that a statute of limitations passed by the Legislature " 'shall afford a reasonable time within which suit may be brought[,] and a statute that fails to do this cannot possibly be sustained as a law of limitations . . . .' "[149]

The *Rory* dissent then asserted that the rule of contractual limitations periods being enforced if reasonable "was generally accepted and widely cited by courts throughout the country," citing cases from six states for that proposition.[150] The dissent also pointed to the 1874 United States Supreme Court case *Express Co v Caldwell*,[151] in which, according to the dissent, the United States Supreme Court "held that, while a common carrier could

---

[146] Justices M. F. CAVANAGH and WEAVER both agreed with the result advocated by the lead dissent but wrote their own shorter dissents arguing that insurance contracts should receive special treatment from courts because of their uniquely one-sided nature.

[147] *Price v Hopkin*, 13 Mich 318 (1865).

[148] *Rory*, 473 Mich at 493 (KELLY, J., dissenting).

[149] *Id.*, quoting *Price*, 13 Mich at 324-325 (alterations by Justice KELLY).

[150] *Rory*, 473 Mich at 493-494 (KELLY, J., dissenting) (citations omitted). But see *id.* at 470 n 24 (opinion of the Court) ("Citation of case law from other jurisdictions simply does not alter the fact that the 'very old and well tested legal rule' of *Michigan* eschewed using 'reasonableness' as a basis for abrogating contractually shortened limitations provisions.").

[151] *Express Co v Caldwell*, 88 US (21 Wall) 264; 22 L Ed 556 (1874).

30

enter into [a contract to limit its liability], courts could review the contract provision for reasonableness."[152] Because insurers have power and control over policyholders, judicial review must ensure that the power is not abused and that the intent of the parties is upheld.[153] The *Rory* dissent concluded that the limitations period was unreasonable because it did not give the plaintiffs adequate time to discover their injury and bring suit.[154]

Concerning adhesion contracts, the lead *Rory* dissent criticized the *Rory* majority for overturning "precedent used to protect the people of Michigan[.]"[155] The *Rory* dissent argued that the adhesion-contract doctrine had long been used to "balanc[e] the inequities of form contracts" and emphasized that the terms of form contracts, especially insurance policies, were never bargained for.[156] *Herweyer* merely updated Michigan law to come in line with the adhesion-contract doctrines of many other states.[157] According to the *Rory* dissent, if a "consumer does not read and comprehend the individual clauses of the contract, there can be no agreement on the particular terms in them," and "[t]here can be no meeting of the minds."[158] The *Rory* dissent contended that enforcing the terms of such contracts as

---

[152] *Rory*, 473 Mich at 494 (KELLY, J., dissenting).

[153] *Id*. at 495-496.

[154] *Id*. at 497-501.

[155] *Id*. at 505.

[156] *Id*. at 507-508.

[157] *Id*. at 508-509.

[158] *Id*. at 508. Significantly, the *Rory* dissent did not respond to the argument that, under its view, a so-called adhesion contract could never validly be formed, and thus no form contracts could exist at all. See *id*. at 490 n 84 (opinion of the Court).

31

written would be "utterly unworkable" because courts must be able to ensure that take-it-or-leave-it contracts are equitable.[159] Finally, the *Rory* dissent argued that insurance policies require special equitable consideration because of the ease with which powerful insurers might take advantage of powerless insureds.[160]

### b. *CLARK v DAIMLERCHRYSLER CORP* AND BEYOND

Perhaps the most on-point post-*Rory* case for the dispute here is *Clark v DaimlerChrysler Corp*,[161] which the Court of Appeals decided the same year as *Rory*. In *Clark*, the Court of Appeals considered a six-month limitations period in an employment contract[162] functionally identical to the one in this case. The *Clark* majority simply applied *Rory*'s holdings, as it was required to do.[163] The contractually shortened limitations period was not ambiguous, so it had to be enforced unless contrary to law or public policy.[164] And there was no law or public policy barring enforcement of the six-month limitations period.[165] The *Clark* majority then rejected the plaintiff's argument that the limitations period should not be enforced because it was a contract of adhesion requiring close

---

[159] *Id*. at 508-510 (KELLY, J., dissenting).

[160] *Id*. at 510-511.

[161] *Clark v DaimlerChrysler Corp*, 268 Mich App 138; 706 NW2d 471 (2005), lv den 475 Mich 875 (2006).

[162] *Id*. at 140-141.

[163] *Id*. at 141-143.

[164] *Id*. at 142, citing *Rory*, 473 Mich at 470 (opinion of the Court).

[165] *Clark*, 268 Mich App at 142, citing *Rory*, 473 Mich at 471-472, and *Timko*, 244 Mich App at 240-244.

32

scrutiny.[166] Because *Rory* had overruled *Herweyer*'s "close scrutiny" exhortation, whether the employment contract was "one of adhesion" had no relevance to its enforceability.[167] And the plaintiff had established neither procedural nor substantive unconscionability.[168] The plaintiff had offered no evidence that he "lacked any meaningful choice but to accept employment under the terms dictated by defendant," and a six-month limitations period was not "so extreme that it shock[ed] the conscience."[169] The limitations provision was valid and had to be enforced as written.[170]

Dissenting in *Clark*, Judge NEFF directed her arguments to unconscionability and public policy.[171] The *Clark* dissent argued that procedural unconscionability existed because an employee generally does not deal at arm's length with an employer and generally has no option but to accept the terms offered or lose the job opportunity.[172] According to the *Clark* dissent, the plaintiff had no choice but to accept the limitations period, and the plaintiff might not have even realized the terms to which he was agreeing; accordingly, the provision could not have been "bargained-for."[173] The *Clark* dissent also

---

[166] *Clark*, 268 Mich App at 143.

[167] *Id.*

[168] *Id.* at 143-144.

[169] *Id.* at 144.

[170] *Id.* at 145.

[171] *Id.* at 145 (NEFF, P.J., dissenting).

[172] *Id.* at 149-150.

[173] *Id.* at 151-152.

concluded that the term was substantively unconscionable because it put the "plaintiff at a severe disadvantage in seeking redress for wrongs and is unquestionably advantageous to [the] defendant by permitting it to wholly avoid employee claims."[174]  As for public policy, the *Clark* dissent argued, from the dissenting judge's own view of what would be fair and reasonable, that a six-month limitations period was too short for plaintiffs to bring claims; moreover, "shortening the limitations period to six months [was] extreme and unnecessary to protect" defendants' legitimate interests.[175]  Further, allowing the six-month limitations period would "supplant the Legislature's determination" about the proper limitations period.[176]

In sum, over the last 20 years, Michigan courts have routinely applied *Rory*'s holding that an unambiguous contract must be enforced as written unless doing so would violate law or public policy—without regard to judicial perceptions of "reasonableness" or the purported adhesive nature of the contract.[177]  Notwithstanding the criticism of the *Rory* and *Clark* dissents, *Rory* was well-reasoned, has proven workable in practice, and has

---

[174] *Id*. at 153-154.

[175] *Id*. at 155.

[176] *Id*. at 155-156.

[177] See, e.g., *Meemic Ins Co v Fortson*, 506 Mich 287, 299; 954 NW2d 115 (2020); *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 376; 817 NW2d 504 (2012); *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 198-199; 747 NW2d 811 (2008); *Holland v Trinity Health Care Corp*, 287 Mich App 524, 527; 791 NW2d 724 (2010); *Alcona Co v Robson Accounting, Inc*, unpublished per curiam opinion of the Court of Appeals, issued September 24, 2013 (Docket Nos. 301532 and 302134), pp 2-4; *Ursery v Option One Mtg Corp*, unpublished per curiam opinion of the Court of Appeals, issued July 31, 2007 (Docket No. 271560), pp 13-14.

helped ensure that contract law remains a reliable, predictable means of conducting business and ordering affairs in Michigan.[178]

## B. APPLICATION

As the Court of Appeals and trial court correctly held, the Acknowledgment's 180-day limitations period is enforceable against plaintiff. "[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written."[179] There is no dispute that the Acknowledgment unambiguously required plaintiff to file any employment-related claim within 180 days of the employment action giving rise to the claim. There is no dispute that she did not do so. Consequently, summary disposition was proper under MCR 2.116(C)(7)[180] unless plaintiff can show that the Acknowledgment violates law or that a traditional contract defense applies.

The only argument plaintiff brought in the trial court, the Court of Appeals, or her application in this Court against the enforcement of the limitations period was that it was an "unconscionable contract of adhesion." This seems to consist of two arguments in one, as unconscionability and contractual adhesiveness are different concepts. Regardless, her argument lacks merit. It is of no legal significance whether plaintiff terms her employment

---

[178] See *Robinson v Detroit*, 462 Mich 439, 464-468; 613 NW2d 307 (2000).

[179] *Rory*, 473 Mich at 461.

[180] See *Dextrom*, 287 Mich App at 431.

contract an "adhesion contract."[181]  The question, then, is whether the limitations term was

unconscionable.

The Court of Appeals has aptly explained the requirements for the defense of

unconscionability:

> For a contract or a contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present.  Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term.  Substantive unconscionability exists where the challenged term is not substantively reasonable.  However, a contract or contract provision is not substantively unconscionable simply because it is foolish for one party or very advantageous to the other.  Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience.[182]

---

[181] *Rory*, 473 Mich at 489.

[182] *Liparoto*, 284 Mich App at 30-31, citing *Clark*, 268 Mich App at 143-144 (quotation marks and citation omitted).  The "shock the conscience" language traces back to a century-old decision of this Court.  In the 1923 decision *Gillam v Mich Mtg-Investment Corp*, the Court quoted the vivid language of a treatise to expound on what it means for the substance of a term to be unconscionable:

> An unconscionable contract is said to be one "such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other."  To what extent inadequacy of consideration must go to make a contract unconscionable is difficult to state, except in abstract terms, which give but little practical help.  It has been said that there must be "an inequality so strong, gross, and manifest, that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it."  Another form of stating the rule is that "where the inadequacy of price is so great that the mind revolts at it, the court will lay hold on the slightest circumstances of oppression or advantage to rescind the contract."  It is also said that a contract will be regarded as unconscionable if the inadequacy is so gross as to shock the conscience.  The fact that the contract is a foolish one for one of the parties, and a very advantageous one for the other, does not of itself establish the fact that it was unconscionable.  [*Gillam v Mich Mtg-Investment Corp*, 224 Mich 405, 409;

Neither element of unconscionability is present here. Plaintiff brings no allegation that she had no realistic alternative but to accept the shortened limitations period. Nor would such an allegation be plausible. Certainly, it would have been inconvenient for her to end her employment with defendant and seek a new position elsewhere. But there is no evidence that rejecting the terms of employment and finding another job was not a "realistic alternative."[183] Plaintiff is a CNA whose job performance quickly resulted in her promotion to a supervisory position. These are clear indications that she has marketable skills that would allow her to find suitable alternative employment. Nothing in the record suggests that plaintiff "lacked any meaningful choice but to accept employment under the terms dictated by defendant"[184]—quite the opposite. Plaintiff also offers no support whatsoever for her insinuation that procedural unconscionability is inherent in an employment contract.

As for substantive unconscionability, the assertion that a 180-day limitations period shocks the conscience contradicts both legal authority and common sense. Because a substantively unconscionable term must be more than merely "foolish for one party and very advantageous to the other,"[185] the term must truly be extreme. A limitations period of 180 days provides a benefit to the employer, to be sure, and makes it more difficult for an employee to bring a lawsuit. But it is hardly extreme, as shown by the fact that six-

---

194 NW 981 (1923), quoting 1 Page, Law of Contracts (2d ed), § 641, p 1114 (quotation marks omitted).]

[183] *Liparoto*, 284 Mich App at 31.

[184] *Clark*, 268 Mich App at 144.

[185] *Id*.

37

month limitations periods in employment contracts have expressly been allowed in Michigan for *more than 20 years*.[186] That Michigan courts have enforced such provisions for so long sharply counters any suggestion that the provisions "shock the conscience." Further, as defendant points out, our own Legislature has provided a limitations period of *90 days*—half the length of the one here—for actions under the Whistleblowers' Protection Act.[187] That statute covers a similar subject matter as the one invoked here: adverse actions taken by employers against employees. If a limitations period of 90 days for an employment action is sufficient as a matter of statutory law, then a contractual agreement to a limitations period of 180 days cannot possibly be considered shocking.[188]

In sum, plaintiff's arguments are meritless. The trial court correctly granted defendant summary disposition, and the Court of Appeals correctly affirmed under our well-established caselaw.

## C. FLAWS IN THE MAJORITY OPINION

The majority opinion now declares that *Rory* does not apply to "adhesive" employment contracts. In doing so, the majority does not engage with *Rory*'s rationale or tell us why the basic principles set forth in *Rory* do not apply to such contracts. The majority opinion also resurrects the "reasonableness" requirement for contractual

---

[186] See *Timko*, 244 Mich App at 244-245; *Clark*, 268 Mich App at 144.

[187] MCL 15.363(1) ("A person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation of this act.").

[188] The *Clark* dissent mustered little argument in support of its conclusion that the six-month limitations period there was substantively unconscionable. See *Clark*, 268 Mich App at 147-154 (NEFF, P.J., dissenting).

limitations periods, at least in the employment context, while mixing this requirement with the idea that adhesion contracts must be given special scrutiny by courts. Regarding adhesion contracts, the majority opinion summarily reasserts *Herweyer*'s approach while again declining to engage with *Rory*'s analysis. Doing all this, the majority opinion undermines the stability of Michigan contract law, resurrects and muddles together long-rejected legal theories, and fosters confusion about what validly formed contracts will and will not be enforced in our state. Finally, despite its apparent reluctance to use traditional contract defenses to reach its desired result,[189] the majority opinion discusses the possibility that the contract term at issue here is unconscionable. The majority opinion distorts that doctrine while leaving unexplained the question of how it could be necessary for plaintiff to meet the high standard of unconscionability if she can prevail by proving mere unreasonableness.

1. REASONABLENESS OF THE CONTRACTUAL LIMITATIONS PERIOD

The majority opinion resolves the case largely through the reassertion of the idea that contractual limitations periods in employment contracts must be reviewed for reasonableness. It does this while attempting to blend *Camelot*'s "reasonableness" rule for contractual limitations periods with *Herweyer*'s statements about adhesion contracts

---

[189] As noted, last term the Court heard oral argument on the application concerning whether the contractual limitations period was invalid because it violated public policy. *Rayford*, 511 Mich at 1010. Violation of public policy is a traditional defense to the enforcement of a contract, see *Terrien*, 467 Mich at 65-68 (discussing the historic practice of deeming contractual agreements unenforceable because they violate established public policy), albeit not a defense raised by plaintiff in the lower courts or on appeal in this Court. More than five months after hearing oral argument on the public-policy issue, we granted leave to appeal and asked entirely different questions of the parties. *Rayford*, 513 Mich at 1096. The Court now decides the case without expressly relying on public-policy doctrine.

39

receiving special review. Although these are distinct concepts stemming from different lines of cases, the majority opinion conflates them.

It must be reiterated that plaintiff never argued in the lower courts or in her application to this Court for the application of the long-discarded *Camelot* "reasonableness" requirement. The issue, therefore, was not preserved and is not properly presented for our review.[190] This Court has stated that, although it has the inherent power to review an unpreserved issue "when some fundamental error would otherwise result in some egregious result[,] . . . such power of review is to be exercised quite sparingly[.]"[191] The majority opinion does not explain why this power should be exercised in this case.[192] Instead, the majority opinion downplays the lack of preservation and misleadingly attempts to graft the unpreserved reasonableness issue onto the preserved adhesion-contract issue. These issues are "interconnected"[193] only in the sense that the majority wishes to use them to reach its desired result.[194] More stunning, the reasonableness issue is not only

---

[190] See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) ("Under our jurisprudence, a litigant must preserve an issue for appellate review by raising it in the trial court. . . . [G]enerally a failure to timely raise an issue waives review of that issue on appeal.") (quotation marks and citation omitted). But it is very clear that preservation is a concept the Court's majority implements only when it leads to a desired result. See *People v Armstrong (Amended Opinion)*, ___ Mich ___, ___ n 62; ___ NW3d ___ (June 3, 2025) (Docket No. 165233) (ZAHRA, J., dissenting); slip op at 20 n 62.

[191] *Napier v Jacobs*, 429 Mich 222, 233; 414 NW2d 862 (1987).

[192] It is difficult to see how any "fundamental error," *id.*, could have occurred in this case because the lower courts faithfully applied binding precedent.

[193] *Ante* at 40 n 32.

[194] That *Herweyer* cited *Camelot*'s holding regarding "reasonableness" review for contractual limitations periods and then cited Justice LEVIN's *Camelot* concurrence to support giving special scrutiny to adhesion contracts does nothing to draw these disparate

40

unpreserved but was raised by this Court in the first instance.  This is the second issue that this Court has raised on plaintiff's behalf in this litigation, along with the public-policy issue that we considered last term.[195]

Forging ahead, the majority opinion relies almost entirely on this Court's 1865 *Price* decision to justify bringing back "reasonableness" review for contractual limitations periods.  But like the lead *Rory* dissent, the majority opinion omits the essential context when relying on *Price*.  The Court's decision in *Price* does not stand for the proposition that contractual limitations periods may be reviewed for reasonableness.  *Price* involved the passage of a statute that retroactively shortened the limitations period for actions relating to real property.[196]  Although the *Price* plaintiff possessed a live claim to a parcel of property before the statute was passed, the statute had the immediate effect of rendering her claim time-barred.[197]  In an opinion by Justice COOLEY, this Court held that the statute could not be applied against the plaintiff.[198]  But that holding did not rest on an assessment by a court of what limitations period was "reasonable," as in the *Camelot* line of cases.

---

ideas together.  Indeed, a central premise of the *Camelot* concurrence was that the *Camelot* "reasonableness" standard for contractual limitations periods could not be applied to adhesion contracts.  See *Camelot*, 410 Mich at 141 (LEVIN, J., concurring).

[195] The majority opinion seems to take the view that it can address any legal issue it wishes so long as that legal issue relates to the desired goal of granting relief to plaintiff.  Future litigants may take note that, if they fall into a category that a majority of this Court desires to assist, they need only state a position and allow this Court to raise legal issues and theories on their behalf.

[196] *Price*, 13 Mich at 321-323.

[197] *Id*. at 328.

[198] *Id*.

41

Instead, the Court concluded that the statutory amendment violated the *Price* plaintiff's constitutional right to due process by retroactively destroying an existing, vested right without permitting the plaintiff any opportunity to bring her claim:

> It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought. . . . [A]nd a statute that fails to do this cannot possibly be sustained as a law of limitations, *but would be a palpable violation of the constitutional provision that no person shall be deprived of property without due process of law.*[199]

The majority thus mistakes the holding of *Price* when it asserts that *Price* involved "a statute passed by the Legislature" being "examined for reasonableness to ensure fairness . . . ."[200] As explained, the *Price* Court declined to apply a statute of limitations to avoid a violation of the plaintiff's constitutional right to due process,[201] not to advance some abstract notion of fairness. What is more, the federal and state constitutional rights to due process apply only against actions by the government—not against private action.[202] In the dispute at hand, there is no allegation of a due-process violation, and there is no state action. *Price* simply does not apply here, just as it had no relevance when the lead *Rory*

---

[199] *Id*. at 324-325 (emphasis added). See *id*. at 328.

[200] *Ante* at 26.

[201] *Price*, 13 Mich at 324-325, 328.

[202] *Lugar v Edmondson Oil Co, Inc*, 457 US 922, 930; 102 S Ct 2744; 73 L Ed 2d 482 (1982); *Mays v Governor*, 323 Mich App 1, 33; 916 NW2d 227 (2018), citing *Sharp v Lansing*, 464 Mich 792, 813; 629 NW2d 873 (2001).

dissent cited it 20 years ago.[203]  Consequently, the majority opinion's invocation of "140 years" of reasonableness caselaw in Michigan[204] is misleading and inaccurate.[205]

As the *Rory* Court noted, the "reasonableness" principle for enforcing contractual limitations periods did not enter Michigan law until the *Tom Thomas* Court mentioned it in dicta without reference to any Michigan authority.[206]  Even *Tom Thomas* recognized that Michigan courts had enforced contractual limitations periods without reference to reasonableness since at least 1907.[207]  *Camelot*, citing no Michigan authority but *Tom Thomas*, adopted the "reasonableness" requirement with almost no analysis or stated

---

[203] Notably, the *Rory* dissent's quotation of *Price*, which the majority opinion repeats as the cornerstone of its "reasonableness" analysis, employed an ellipsis to cut off the quotation just before it reached the key language "but would be a palpable violation of the constitutional provision that no person shall be deprived of property without due process of law."  Compare *Rory*, 473 Mich at 493 (KELLY, J., dissenting), quoting *Price*, 13 Mich at 324-325, with *Price*, 13 Mich at 324-325.  See also *Rory*, 473 Mich at 471 n 28 (opinion of the Court) (distinguishing *Price*).

As for the United States Supreme Court case *Express Co v Caldwell*, on which the *Rory* dissent also relied, that case was not decided under any general reasonableness rule for contractual limitations periods but in relation to the "public policy" surrounding common carriers.  See *Caldwell*, 88 US at 266-268, 270.  Although *Caldwell* repeatedly referred to what contractual limitations of common-carrier liability would be "reasonable" or "unreasonable," see *id*. at 266-272, it also said that "[w]hether . . . rules are reasonable or unreasonable must be determined *with reference to public policy*," *id*. at 270 (emphasis added).  Thus, any "reasonableness" principle to be drawn from *Caldwell* would seem to be a subset of a public-policy analysis.

[204] *Ante* at 28.

[205] The majority opinion states that my analysis of *Price* is "reductive."  *Ante* at 26 n 19.  I leave it to the reader to decide which opinion has accurately related *Price*'s reasoning and holding.

[206] See *Rory*, 473 Mich at 466.

[207] See *Tom Thomas*, 396 Mich at 592 n 4.

justification for doing so, despite the decades of contrary caselaw.[208]  In this way, the reasonableness analysis was bootstrapped into existence in Michigan law.

*Rory* recognized the *Camelot* line of cases for what it was—a violation of the "bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance such as a contract in violation of law or public policy."[209]  *Camelot* and its progeny had no basis in Michigan law.[210]  Instead, they tacitly overruled many decades of Michigan caselaw enforcing contractual limitations periods without reference to reasonableness.[211]  " 'The general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts.' "[212]  When a court injects its own notions of reasonableness into a contract, it violates the basic freedom to order one's affairs through

---

[208] See *Camelot*, 410 Mich at 129-136 (opinion of the Court).

[209] *Rory*, 473 Mich at 469 (quotation marks and citation omitted).

[210] *Id*. at 468 (citing cases spanning more than 80 years for the proposition that a "fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*").  See *id*. at 470 n 24 ("Citation of case law from other jurisdictions simply does not alter the fact that the 'very old and well tested legal rule' of *Michigan* eschewed using 'reasonableness' as a basis for abrogating contractually shortened limitations provisions.").

[211] *Id*. at 466 n 15, 468 n 19, 470 n 24.

[212] *Terrien*, 467 Mich at 71, quoting *Twin City Pipe Line Co v Harding Glass Co*, 283 US 353, 356; 51 S Ct 476; 75 L Ed 1112 (1931) (alteration by the *Terrien* Court).

contract.[213]  It is the parties' agreement that must be enforced, not what a court thinks the parties' agreement should have been.[214]

How the majority opinion would respond to these arguments from *Rory* remains a mystery, as the majority entirely ignores them.  Ironically, the majority accuses *Rory* of "completely disregard[ing] our prior caselaw requiring that shortened limitations periods be reviewed for reasonableness . . . ."[215]  Again, the majority opinion's depiction of the situation is inaccurate.  In fact, *Rory* addressed that caselaw head-on and explained why it was wrong, while the majority ignores *Rory*'s substance.  As demonstrated previously, *Rory* engaged in an extensive and persuasive analysis to illustrate why the prior line of caselaw now relied on by the majority opinion was not only cobbled together and unsupported in the law, but entirely incompatible with our longstanding legal principles applicable to contract law.  The majority opinion rebuts none of this reasoning.  It disserves this Court's jurisprudence and our duty to the people of Michigan to overrule our precedent without explaining why it was wrong, especially when we are curtailing a basic liberty.  Even worse is that the majority opinion does this in a case in which the issue is neither preserved nor presented for our review.

Having reanimated the "reasonableness" doctrine, the Court's majority overrules *Timko*'s holding that a six-month limitations period is presumptively reasonable.  In doing so, the majority illustrates how a rule of "reasonableness" can provide an excuse for courts

---

[213] *Rory*, 473 Mich at 468-469.

[214] *Id*. at 469-470.

[215] *Ante* at 28.

to dictate their own preferred policies. The majority opinion conducts a public-policy analysis and concludes that the policy value at issue—ensuring that employees may bring civil-rights claims against employers—is simply too important for the applicable limitations period to be left open to alteration by contract.[216] The majority's criticism of *Timko* is primarily an extended statement of the majority's policy view that protecting plaintiffs from contractually restricting their right to bring claims is more important than the freedom to contract. If the majority wishes to resolve this case as a matter of public policy, which itself would be ill-advised, it is puzzling why it did not do so after we held oral argument on the application to address whether the Acknowledgment violates public policy.[217]

And despite its reliance on policy considerations, the majority does not apply the objective and restrained public-policy doctrine that we clarified in *Terrien* and have applied throughout the years.[218] Instead, the majority opinion seems to be taking the subjective public-policy approach that we rejected in *Terrien* when we stated that the "public policy

---

[216] See *ante* at 28-29. Although the majority, in turn, accuses me of "prefer[ring]" the freedom of contract as a matter of "balancing conflicting public policies," *ante* at 39 n 31, I note simply that I rely on our Court's recognition and protection of the basic freedom of contract as a bedrock legal principle. See, e.g., *Rory*, 473 Mich at 468-469; *Wilkie*, 469 Mich at 51-52; *Terrien*, 467 Mich at 71. This freedom finds its legal foundation in the United States and Michigan Constitutions. US Const, art I, § 10, cl 1; Const 1963, art 1, § 10. It is revealing that the majority both deems the freedom of contract merely to be my "own" bedrock legal principle and sees this dispute as a matter of balancing public-policy interests. *Ante* at 39 n 31.

[217] See *Rayford*, 511 Mich at 1010.

[218] See *Terrien*, 467 Mich at 66-68; *Rory*, 473 Mich at 471-472; *Soaring Pine Capital Real Estate & Debt Fund II, LLC v Park Street Group Realty Servs, LLC*, 511 Mich 89, 101-102; 999 NW2d 8 (2023).

of Michigan is *not* merely the equivalent of the personal preferences of a majority of this Court[.]"[219]  We would do well to remember that the "responsibility for drawing lines in a society as complex as ours—of identifying priorities, weighing the relevant considerations and choosing between competing alternatives—is the Legislature's, not the judiciary's."[220]

The Court's majority also claims that *Timko* "did not actually conduct any analysis on how the *Camelot* factors applied to the parties."[221]  There is no particular reason why *Timko* should have applied the *Camelot* factors in any detail, as the plaintiff in *Timko* failed to "address how the instant, shortened period of limitation violate[d] any of the three prescribed considerations" of *Camelot*.[222]  In other words, the *Timko* plaintiff did not make an argument beyond a general assertion of unreasonableness.  And *Timko* was on solid ground when it concluded that there was nothing inherently unreasonable about a six-month limitations period in an employment contract.  In *Myers*, the United States Court of Appeals for the Sixth Circuit, applying *Camelot*, concluded that there was "nothing inherently unreasonable about a six-month limitations period" in an employment contract that was being invoked against the plaintiff-employee's civil-rights claims.[223]  "For example," the *Myers* court continued, "six months is the time limit within which claims must be brought for breach of the duty of fair representation under the Labor Management

---

[219] See *Terrien*, 467 Mich at 67.

[220] *Van v Zahorik*, 460 Mich 320, 327; 597 NW2d 15 (1999) (quotation marks and citations omitted).

[221] *Ante* at 29.

[222] *Timko*, 244 Mich App at 240.

[223] *Myers*, 849 F2d at 262.

47

Relations Act. . . . We cannot say that, under the *Camelot* criteria, the six-month limitation in this case is less reasonable than that applied to fair representation claims."[224] Although not binding, the *Myers* opinion was strong persuasive authority to support *Timko*'s conclusion that the six-month limitations period was not inherently unreasonable.

Leading into the next section, which addresses the majority's arguments about adhesion contracts, it should be emphasized that the "reasonableness" analysis that the majority resurrects today does not apply beyond contractual limitations periods. There is no suggestion within the *Camelot* line of cases that courts may assess "reasonableness" in contractual terms more generally, including in "adhesive" employment contracts.[225]

## 2. ADHESION CONTRACTS

Concerning adhesion contracts, *Rory* speaks for itself. There is little use repeating the prior summary, as the majority opinion has chosen avoidance of *Rory*'s analysis rather than rebuttal on the merits. The majority opinion accepts without question or rationale the proposition that courts should treat so-called adhesion contracts differently than other contracts. The majority opinion advances no argument of its own to support this conclusion but merely points to *Herweyer*, ostensibly "restor[ing] *Herweyer* to its proper place . . . ."[226] But given that *Herweyer*—which cited no authority but the *Camelot* concurrence, which itself cited no authority for its assertions—represents the only adoption of the adhesion-contract theory by this Court in Michigan history, *Rory* had little reason to

---

[224] *Id*. (citation omitted).

[225] See *Camelot*, 410 Mich at 126, citing *Tom Thomas*, 396 Mich at 592.

[226] *Ante* at 28.

48

defer to *Herweyer*'s unreasoned approach to adhesion contracts. On its own terms, *Rory* overruled *Herweyer* as far as adhesion contracts are concerned.[227] The *Rory* Court did not have to stretch to reach the adhesion-contract issue. In *Rory*, the trial court and the Court of Appeals both relied on *Herweyer*'s "close judicial scrutiny" approach for adhesion contracts as part of their bases to declare the pertinent contract unenforceable.[228] Because the lower courts in *Rory* relied on the adhesion-contract doctrine as expressed in *Herweyer*, this Court properly addressed the issue when it overruled *Herweyer*.[229] Indeed, given the posture of the case, it would have been strange and possibly inappropriate for this Court to reverse the lower courts' judgments in *Rory* without addressing that material part of the lower courts' holdings. And the contract principles set forth in *Rory* were broad and fundamental. Conceptually, they apply to all contracts, including "adhesive" employment contracts. Although the majority claims that we are bound by *Herweyer*'s statements about adhesion contracts,[230] we are, in fact, bound by *Rory*.[231]

A curious aspect of the majority opinion's treatment of *Rory*'s adhesion-contract holding as "dicta" is that the majority's approach to dicta would render *Herweyer*'s

---

[227] *Rory*, 473 Mich at 490.

[228] *Id*. at 462-463, 464 n 3; *Rory*, 262 Mich App at 687.

[229] See *Rory*, 473 Mich at 477 n 35.

[230] *Ante* at 28 n 22.

[231] The solo concurrence concludes that *Rory* was not dicta in the employment context but suggests that the Court can nonetheless carve out an exception from *Rory* without conducting a stare decisis analysis. This view lacks support in our stare decisis jurisprudence. See *Robinson*, 462 Mich at 464-468. The notion that we can simply carve out exceptions to binding decisions that we dislike would quickly render stare decisis an empty concept.

adhesion-contract language dicta as well. The *Herweyer* Court addressed the following question: "what limitation period for filing suit is appropriate where the period written into the employment contract is unreasonably short[?]"[232] In summarizing *Camelot* and Justice LEVIN's concurrence, the *Herweyer* Court summarily endorsed Justice LEVIN's view of adhesion contracts.[233] The Court then proceeded to resolve the case on the grounds that vague and uncertain contractual limitations periods cannot displace the statutory period as a matter of policy.[234] *Herweyer* never invoked the ideas of "adhesion contracts" or "close judicial scrutiny" in its analysis or resolution of the case before it.[235] Accordingly, *Herweyer*'s assertions about adhesion contracts and close judicial scrutiny would seem to be " 'not necessary to the decision in the case' " and therefore dicta.[236] Given that the majority's reasoning requires the conclusion that *Herweyer*'s adhesion-contract language was never the law of the state, it is confusing that the majority purports to return *Herweyer* to its "proper place" as precedent.[237]

In arguing that this case is distinguishable from *Rory* because it is an employment case, the majority offers ipse dixit and statements of policy preference but little in the way

---

[232] *Herweyer*, 455 Mich at 15.

[233] *Id.* at 19-21.

[234] *Id.* at 21-24.

[235] See *id.*

[236] *Ante* at 23, quoting *Pew v Mich State Univ*, 307 Mich App 328; 334, 859 NW2d 246 (2014).

[237] *Ante* at 28. It will be interesting to see whether this Court's majority abides by its present approach to dicta when faced with a past decision that, unlike *Rory*, the majority favors.

of explanation or law. The majority opinion asserts that disputes over insurance policies and employment contracts are "wholly different"[238] and "radically different."[239] *Rory* still governs insurance policies, we are told. But *Rory*'s rule of enforcing contracts as written is apparently too severe for employment contracts. Thus, we must surmise that the majority views employment contracts as generally more one-sided and unequal than insurance policies. That is an odd conclusion, as insurance policies have historically received much attention as a uniquely one-sided category of contract, set apart from all other contracts.[240] Does the majority believe that employers generally possess greater control over contracts with their employees than insurers do over contracts with their insureds? This is a counterintuitive conclusion, yet we are left without much explanation of how it was reached.[241]

---

[238] *Ante* at 20.

[239] *Ante* at 24.

[240] See, e.g., *Rory*, 473 Mich at 510-511 (KELLY, J., dissenting); *id*. at 512 (M. F. CAVANAGH, J., dissenting) (criticizing the *Rory* Court for not "acknowledg[ing] the unique character of insurance agreements"); *id*. at 516-519 (WEAVER, J., dissenting) (criticizing the *Rory* Court for abandoning "specialized rules of interpretation and enforcement for insurance contracts" that "recognize[d] that an insured is not able to bargain over the terms of an insurance policy"); *Wilkie*, 469 Mich at 65-66 (M. F. CAVANAGH, J., dissenting) (arguing that "the unique character of insurance agreements" requires special interpretative principles different from those that apply to other contracts); *DeFrain*, 491 Mich at 380-381 (M. F. CAVANAGH, J., dissenting) (advocating for a special interpretative approach for insurance policies because of their "unique character" and the tendency of insurers to take advantage of insureds). The *Rory* Court was also apparently speaking to this view of insurance policies as unique among classes of contracts and thus subject to special treatment when it clarified that "insurance policies *are* subject to the same contract construction principles that apply to *any other species of contract*." *Rory*, 473 Mich at 461 (opinion of the Court) (second emphasis added).

[241] The primary difference that the majority opinion draws between employment contracts and insurance contracts is that the Legislature has empowered a commissioner to review

The majority opinion relies on the *Clark* dissent for the proposition that employment contracts should be treated differently than other types of contracts. But the quoted portion of the *Clark* dissent is that dissent's public-policy analysis,[242] which consists of nothing more than the dissenting judge's view of what public policy should be.[243] That is hardly a compelling authority for the majority opinion's conclusion.[244] Finally, the logic of the *Clark* dissent seems to be that *any* contractually shortened limitations period is invalid because it "supplant[s] the Legislature's determination" of the appropriate limitations

insurance policies on the basis of "reasonableness" and potentially bar insurance policies from being issued if their terms are deemed unreasonable. See *ante* at 20 n 13, citing *Rory*, 473 Mich at 461. This distinction does not do much work. For one, the insurance example demonstrates that choosing whether to permit or prohibit particular contracts or contractual terms on the basis of substantive "reasonableness" is a matter of *policy* for the political branches. By invoking this comparison, the majority is inserting this Court into the roles that the legislative and executive branches fulfill; this Court, in the majority's view, should be able to determine both which contractual terms will be reviewed for reasonableness and what reasonableness means regarding specific terms. Further, the fact that the Legislature chose to implement an executive-branch reasonableness review for insurance contracts but not employment contracts shows the Legislature's greater concern about potential unfairness in the insurance context.

[242] See *Clark*, 268 Mich App at 154-156 (NEFF, P.J., dissenting).

[243] Compare *Clark*, 268 Mich App at 154-156 (NEFF, P.J., dissenting) (citing no authorities standing for the proposition that a six-month limitations period in an employment contract violates established public policy and relying on the dissenting judge's own opinion of the negative repercussions of enforcing such provisions), with *Terrien*, 467 Mich at 66 ("In defining 'public policy,' it is clear to us that this term must be more than a different nomenclature for describing the personal preferences of individual judges, for the proper exercise of the judicial power is to determine from objective legal sources what public policy *is*, and not to simply assert what such policy *ought* to be on the basis of the subjective views of individual judges.").

[244] See *Terrien*, 467 Mich at 66-67.

period.[245] Such a view has no foundation in our law, as even cases like *Herweyer* and *Camelot* readily accepted that limitations periods may generally be shortened by contract.[246]

Drawing from *Herweyer*, the majority opinion reasserts the idea that "adhesion contracts," at least in the employment context, must receive "close judicial scrutiny."[247] Of course, this comes with the problem that the meaning of "close judicial scrutiny" has never been defined. I discern two possible meanings that "close judicial scrutiny" could take. First, it could mean that courts must take extra care when interpreting "adhesion contracts" to ensure that the contracts are, in fact, unambiguous and validly formed under traditional contract law before enforcing them and to apply the traditional doctrine of *contra proferentem*.

The second possible meaning of "close judicial scrutiny" is that courts should be open to altering or refusing to enforce terms of valid and unambiguous "adhesion contracts" on the basis of subjective judicial views of what terms would be "fair" or "reasonable." Given the majority opinion's indifference to legal restraints and the limits of this Court's power, it is unsurprising that it chooses this latter course for the case at

---

[245] *Clark*, 268 Mich App at 155-156 (NEFF, P.J., dissenting).

[246] See *Herweyer*, 455 Mich at 24 (holding that contractually shortened limitations periods are enforceable if "specific and reasonable"); *Camelot*, 410 Mich at 126 (stating as a "general rule" that contractually shortened limitations periods are enforceable).

[247] *Ante* at 25 & n 18.

hand. Courts, we are told, are now to review limitations provisions in adhesive employment contracts for "reasonableness" under *Camelot*.[248]

Because "close judicial scrutiny" is back—at least for "adhesive" employment contracts—but is defined only in the context of contractual limitations provisions, we are left without guidance or constraint for what appears to be an expansive power to retroactively reform or cancel other contractual rights and obligations in employment agreements. What sort of terms may be changed by exercise of a court's discretion? Which contracts are sufficiently "adhesive" to warrant nonenforcement or alteration, and which are not? How "unfair" must the terms be? Which parties may safely rely on the terms of their existing contracts, and which may not? How can "close judicial scrutiny" be applied uniformly across the many courts of Michigan comprised of different judges with varying notions of substantive fairness?

In sum, it seems that the vagueness of the "close judicial scrutiny" standard either renders it largely toothless or else gives carte blanche for indefinite and unpredictable judicial intervention in whichever employment contracts a court may deem "adhesive." One could well be forgiven for taking the cynical view that "close judicial scrutiny" will become "merely a device to permit the free rein of judges' paternalist or redistributionist

---

[248] *Ante* at 24-28. Although the majority states that it limits its "reasonableness" rule to limitations provisions in adhesive employment contracts, *ante* at 28 n 22, it suggests an openness to expanding the reasonableness approach to other adhesion-contract contexts, see *ante* at 28 n 22. The authority for such expansion would be dubious at best, as *Camelot*'s reasonableness rule was limited to contractual limitations periods and had no conceptual link to adhesion contracts.

impulses."[249]  Further, it is difficult to see how this approach will be feasible as a matter of

administration, as the spectrum of validly entered employment-contract terms now runs the

risk of being invalidated based on subjective views of reasonableness.[250]

---

[249] Barnhizer, *Inequality of Bargaining Power*, 76 U Colo L Rev 139, 237 (2005).  See *id*. at 237 n 405 (" 'Of course, when a party escapes from contractual ties on the basis of alleged inequality of bargaining power, he is better off; and since he is typically less prosperous than the other party, it appears that the court has struck a blow for equality.  The middle class judge is thus able to leave the bench that evening enjoying the warm inner glow of a Robin Hood.' "), quoting Williams, Book Review, 25 UCLA L Rev 1187, 1211 (1978) (reviewing Horwitz, *The Transformation of American Law, 1780-1860* (Cambridge: Harvard University Press, 1977)).

[250] Given that the law does not restrain "more powerful" parties from using their power to secure the best terms possible as long as they do not commit violations such as fraud, two scholars have described the problem of trying to retroactively invalidate such terms:

> Together, the no-duty rule and the doctrine of economic duress demonstrate that ex ante—during and throughout the negotiation process—those possessed of superior power are free to use it as they wish, subject only to constraints, such as the avoidance of fraud, that govern the conduct of all contracting parties.  Logic suggests that the foreseeable consequences of conduct permissible ex ante ought not be deemed impermissible ex post. That is, if the contract doctrine governing negotiations permits the powerful to extract favorable agreements from the weak, then the resultant agreements ought not be subject to condemnation on the ground that their enforcement unfairly disadvantages the weak.

> What are the implications of these observations for post-negotiation efforts to undo or modify one-sided contracts?  The most significant conclusion is that courts should enforce contracts as long as neither party negotiated the contract fraudulently and as long as the terms would be permissible in a contract between like parties of "equal strength."  The opposite approach would require courts either (1) to intervene in the bargaining process, after the fact and on a case-by-case basis, to determine where in the course of particular negotiations superior power was misused, or (2) to rewrite the law so as to impose an obligation on the powerful not to take full advantage of their power when negotiating contracts with the weak. Each of these inquiries, though, would defy sound administration.  How much power, for example, would stronger firms be able to exert?  How one-sided a deal could they permissibly reach?  How careful must they be not to

As the majority opinion agrees,[251] the conceptual basis for adhesion contracts as a doctrine is that contracting parties have unequal "bargaining power."[252]  Unfortunately, this does not bring doctrinal clarity.  It will rarely be the case that parties have perfectly equal bargaining power.  Generally, one party will be more "powerful" than the other, and often one will be much more "powerful." Thus, the questions become how much inequality is too much, and what kind of inequality matters?[253]  This presents a problem for real-world application because, as scholars have found, no "coherent method—or any method for that matter—for identifying and assessing" bargaining power exists.[254]  By asserting that

---

taint the bargaining process by the "misuse" of their power?  And of course, and again, when is one party so much more powerful than its counterparty that it must restrain itself from reaching the best deal possible?  How could such a party know in advance of negotiation that its power was sufficient to trigger this requirement?  [Helveston & Jacobs, *The Incoherent Role of Bargaining Power in Contract Law*, 49 Wake Forest L Rev 1017, 1042-1043 (2014).]

[251] See *ante* at 18-19.

[252] See, e.g., *Herweyer*, 455 Mich at 20-21.

[253] See *Incoherent Role*, 49 Wake Forest L Rev at 1044 ("[A] party's bargaining power is not static—it will vary from deal to deal and depend on a multitude of unobservable factors (e.g., its level of interest in the object of the deal, the desirability of substitutes, the absence or presence of time pressure, its skill in negotiating) as well as on the identity of the counterparty.  These characteristics make it impossible to identify specific circumstances or qualities that reliably reveal the extent to which a party has (or lacks) bargaining power.").

[254] *Id*. at 1019.  See *id*. at 1021-1022 ("One of the most peculiar and troubling aspects of the judiciary's analysis of bargaining power is that the basic characteristics of the concept—its definition and the relationship between contract enforceability and bargaining power—are weakly specified.  Hundreds of decisions discuss bargaining power, but not one provides a robust description of the term.  Only a handful even attempt to explain why the parties' bargaining power should affect the enforceability of their contract.").  See also *Bargaining Power*, 76 U Colo L Rev at 143 n 15 ("My study of inequality of bargaining

"adhesion contracts," at least in the employment context, will no longer predictably be enforced according to their terms, the majority brings the problematic concept of bargaining power to the fore. The absence of any coherent, workable definition of bargaining power perhaps explains the lack of a stable definition of "adhesion contract" in the "confused jumble" that preceded *Rory*.[255]

Today's decision upsets legitimate freedom and reliance interests throughout our state's economy.[256] By limiting the ability of employers and employees to adopt binding contractual limitations periods, the majority curtails not only employers' freedom to contract, but the freedom of employees as well. Employees now have far less ability to accept shortened limitations periods (and presumably other terms) in exchange for some other concessions that they might value more, such as better pay or more flexible hours.[257]

---

power as a legal concept has raised personal doubts that the doctrine has any usefulness in guiding judicial discretion.").

[255] *Rory*, 473 Mich at 488 (quotation marks and citation omitted).

[256] See *Robinson*, 462 Mich at 466-467.

[257] Economically, it is irrelevant whether an individual employer and employee actually negotiate over the specific employment terms. Even if an employment contract is offered on a take-it-or-leave-it basis, a prospective employee retains the ability to bargain with his or her feet by leaving or not taking that particular job. And in a competitive market such as employment, contractual limitations periods create a value for employers that will be partly passed on to employees. Eliminating these limitations provisions destroys that value altogether, leaving both employers and employees worse off economically. It is not irrational to think that it would be better for our society to make that trade-off. But that is a policy choice for the political branches—not one that this Court should legislate into existence as it does today. See *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 589; 702 NW2d 539 (2005) ("[P]olicy decisions are properly left for the people's elected representatives in the Legislature, not the judiciary. The Legislature, unlike the judiciary, is institutionally equipped to assess the numerous trade-offs associated with a particular

The majority's decision also potentially destroys the bargained-for consideration of contractually shortened limitations periods that currently exist in countless employment contracts around the state.[258] These clauses create value for employers; otherwise, the employers would not include them in their contracts. But at this Court's diktat, that value may well be gone, with no compensation available. The majority opinion also signals to businesses and private citizens that they can no longer rely on Michigan courts to enforce basic contractual provisions that have long been recognized as valid. Economic actors, corporate and individual, may well respond by choosing more stable and predictable legal environments in which to conduct their business.

The utility of contracts is threatened by uncertainty about enforcement.[259] After today's decision, there is significantly more doubt about what unambiguous contractual terms will be enforced. The specter of contract reformation or invalidation based on judicial perceptions of fairness decreases parties' ability to order their affairs through contract. Those falling into camps of "less" bargaining power, such as employees, might

policy choice."), superseded by statute on other grounds as stated in *Spine Specialists of Mich PC v MemberSelect Ins Co*, ___ Mich ___ (April 1, 2025) (Docket No. 165445).

Of course, there are often significant costs to leaving a job and seeking another. But employers generally have no obligation to employ any particular person on any particular terms, just as employees have no obligation to work for any particular employer on any particular terms.

[258] The majority opinion suggests that this concern is unfounded because the majority's current focus is on "adhesive" "boilerplate" employment agreements and not on other types of contracts. See *ante* at 25 n 18. It is little comfort that the Court presently limits its potential destruction of valid consideration to only one category of previously reliable and binding contracts.

[259] See *Incoherent Role*, 49 Wake Forest L Rev at 1041-1044.

58

suffer the most harm. For them, contracting will likely become more costly or even impossible in some cases, as "powerful" parties seek to protect themselves from uncertainty by imposing higher prices for their contracts[260] or simply declining to contract at all.[261] In short, contracts are useful because they bind parties to predictable performances. If parties are not bound by their agreements, contracts lose their usefulness.[262]

## 3. UNCONSCIONABILITY

To begin, it is unclear why the majority opinion reaches the issue of unconscionability. If, as the majority holds, plaintiff can prevail merely by showing that the Acknowledgment's limitations period is unreasonable, how could it be necessary for her to show unconscionability? Although Michigan cases have described substantive

---

[260] As noted, in the employment context, higher contract prices for employees could include such things as lower wages, worse hours, or reduced benefits.

[261] See *Incoherent Role*, 49 Wake Forest L Rev at 1043-1044 ("No firm, however powerful, can be made to negotiate against its will. But if it has no duty to negotiate, then the more powerful party need not consent to particular terms that it deems unacceptable or to an undesirable form of contract. If the law permits the powerful to refuse to negotiate terms unacceptable to them—even without considering the real economies derived from the use of standard forms—then it must logically permit parties to adopt take-it-or-leave-it positions. And if those positions are permissible, then the resulting contracts, even if they are contracts of adhesion, should not be deemed unenforceable for reasons of misuse of superior power.").

[262] See *Wilkie*, 469 Mich at 52 (" 'One does not have 'liberty of contract' unless organized society both forbears and enforces, forbears to penalize him for making his bargain and enforces it for him after it is made.' "), quoting 15 Corbin, Contracts (interim ed), ch 79, § 1376, p 17. Of course, traditional and longstanding contract defenses—including that a contract may not violate the law or public policy—may render a contract unenforceable. But that is a far cry from introducing uncertainty into contracts generally based on the purported adhesive nature of contracts or the relative "bargaining power" of the contracting parties.

unconscionability as a term not being "substantively reasonable,"[263] unconscionability seems to require something beyond simple unreasonableness. It requires more than terms that are "foolish for one party or very advantageous to the other."[264] It requires inequity of terms "so extreme as to shock the conscience."[265] In more flowery words, a substantively unconscionable contract is one "such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other" or one with "an inequality so strong, gross, and manifest, that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it."[266]

And even if mere unreasonableness was all that needed to be shown, unconscionability would still be redundant in this case. Plaintiff would already be entitled to relief under the majority's reassertion of *Camelot*'s "reasonableness" test and its combination with *Herweyer*'s adhesion-contract statements. Unconscionability would serve no purpose. Thus, the majority's statements about unconscionability are gratuitous.

Not only that, but the majority's statements about procedural unconscionability stretch both established law and common sense. Procedural unconscionability does not exist merely because one party "possesses little to no bargaining power," as the majority suggests.[267] "Procedural unconscionability exists where the weaker party had *no realistic*

---

[263] See *Liparoto*, 284 Mich App at 30 (quotation marks and citation omitted).

[264] *Id.*

[265] *Id.* at 31 (quotation marks and citation omitted).

[266] *Gillam*, 224 Mich at 409 (quotation marks and citation omitted).

[267] See *ante* at 38.

*alternative to acceptance of the term*."[268]  This requires more than unequal bargaining power.  It requires a lack of options.  The majority opinion suggests that leaving an unsatisfactory job situation for other employment is *presumptively* not a realistic alternative.  This proposition is as radical as it is unfounded.  It also carries assumptions that the majority neither acknowledges nor justifies.  It assumes that a person who is qualified for one job will generally have no other employment opportunities through which to support himself or herself.  And it assumes that most employees are de facto indentured servants with no options—except for the grace of the judiciary—but to maintain their employment status quos.  Inconvenience and difficulty do not equate to having no realistic alternatives.[269]

It is plausible that some persons in rare situations will have no realistic alternative but to accept employment at whatever terms they can get.  In such a case, relief from the employment contract would be proper if the terms are substantively unconscionable.  But the majority's assertion that this is the default situation is wholly unjustified.  The party seeking to avoid performance of a contract on the basis of a contract defense such as unconscionability bears the burden of proving that defense.[270]  Plaintiff has offered nothing in the trial court, the Court of Appeals, or this Court to suggest that she had no realistic

---

[268] *Liparoto*, 284 Mich App at 30 (quotation marks and citation omitted; emphasis added).

[269] See *id*. at 30-31.

[270] See *Morris*, 418 Mich at 439-440 (opinion by KAVANAGH, J.).

alternative but to accept employment with defendant on the terms offered. Accordingly, there is nothing for the lower courts to review regarding procedural unconscionability.[271]

## IV. CONCLUSION

Today the Court engages in a remarkable feat of result-oriented activism. Because I believe that we must follow our precedent unless we have good reason to overturn it, that we cannot avoid precedent by construing it as "dicta," that we must decide only the issues properly presented to us and not intervene in cases as advocates, and that our jurisprudence should consist of more than conclusory assertions of policy preference, I dissent. I would affirm the judgment of the Court of Appeals.

Brian K. Zahra

HOOD, J., did not participate because the Court considered this case before he assumed office.

---

[271] Notably, whether a person has "no realistic alternative," *Liparoto*, 284 Mich App at 30-31, is a different proposition from whether a person has "no alternative whatsoever," *ante* at 31. Further, plaintiff was certainly free to present evidence showing that she had no realistic alternative but to accept the terms of employment offered to her, including the various sorts of evidence that the majority opinion observes that we have previously recognized as being suitable considerations for unconscionability. See *ante* at 32. But plaintiff did not. I am puzzled by the majority opinion's suggestion that plaintiff needed discovery from defendant to uncover evidence of her realistic alternatives to employment with defendant. See *ante* at 40 n 33. At any rate, assuming that summary disposition was granted under MCR 2.116(C)(7), plaintiff failed to convince the trial court that any question of fact concerning unconscionability existed such that further factual development would be warranted. See *Dextrom*, 287 Mich App at 431.